## UNITED STATES *v.* BALL.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
EASTERN DISTRICT OF TEXAS.

No. 461.  Argued March 26, 1896. — Decided May 25, 1896.

A general verdict of acquittal, in a court having jurisdiction of the cause and of the defendant, upon the issue of not guilty to an indictment undertaking to charge murder, and not objected to before verdict as insufficient in that respect, is a bar to a subsequent indictment against him for the same killing.

A verdict in a case submitted to the jury on Saturday may be received and the jury discharged on Sunday.

A defendant in a criminal case, who procures a verdict and judgment against him to be set aside by the court, may be tried anew upon the same or another indictment for the same offence of which he was convicted.

Whether defendants jointly indicted shall be tried together or separately rests in the sound discretion of the trial court.

After a witness in support of a prosecution has testified, on cross-examination, that he had, at his own expense, employed another attorney to assist the attorney for the government, the question " How much do you pay him ?" may be excluded as immaterial.

Upon a trial for murder by shooting, in different parts of the body, with a gun loaded with buckshot, and after the introduction of conflicting evidence upon the question whether a gun found in the defendant's possession would scatter buckshot, it is within the discretion of the court to decline to permit the gun to be taken out and shot off, in the presence of a deputy marshal, in order to test how it threw such shot.

An indictment for murder, which alleges that A, at a certain time and· place, by shooting with a loaded gun, inflicted upon the body of B "a mortal wound, of which mortal wound the said B did languish, and languishing did then and there instantly die," unequivocally alleges that B died of the mortal wound inflicted by A, and that B died at the time and place at which the mortal wound was inflicted.

The court is not bound, as matter of law, to set aside a verdict of guilty in a capital case, because no special oath was administered to the officer in charge of the jury, if he was a deputy marshal who had previously taken the oath of office, and no objection to his taking charge of the jury without a new oath was made at any stage of the trial, and the jury were duly cautioned by the court not to separate or to allow any other person to talk with them about the case, and there is nothing tending to show that the jury were exposed to any influence that might interfere with the impartial performance of their duties or prejudice the defendant.

THIS was an indictment for murder, returned at April term, 1891, of the Circuit Court of the United States for the Eastern District of Texas. The case is stated in the opinion.

*Mr. C. H. Smith* for plaintiffs in error. *Mr. J. C. Hodges* and *Mr. A. J. Nichols* were on his brief.

*Mr. Assistant Attorney General Dickinson* for defendants in error.

MR. JUSTICE GRAY delivered the opinion of the court.

At October term, 1889, of the Circuit Court of the United States for the Eastern District of Texas, the grand jury returned an indictment against Millard Fillmore Ball, John C. Ball and Robert E. Boutwell, for the murder of William T. Box, alleging that the defendants, being white men and not Indians, on June 26, 1889, in Pickens county, in the Chickasaw Nation, in the Indian Territory, did unlawfully and feloniously, and with their malice aforethought, and with a deadly weapon, to wit, a gun, held in their hands, and loaded and charged with gunpowder and leaden balls, make an assault upon the body of William T. Box, and "did shoot off and discharge the contents of said gun in and upon the body of said William T. Box, inflicting thereon ten mortal wounds, of which mortal wounds the said William T. Box did languish, and languishing did die."

Upon that indictment, the three defendants were arraigned, and pleaded not guilty, and were tried together upon the issues so joined. The trial began on Wednesday, October 30,

1889, and proceeded from day to day until Saturday, November 2, when the jury retired to consider of their verdict, and no verdict having been returned at the usual hour of adjournment, the court was kept open to receive the verdict. On Sunday, November 3, 1889, the jury returned a verdict as follows: " We, the jury, find the defendants J. C. Ball and R. E. Boutwell guilty, as charged in this indictment; and we find M. Fillmore Ball not guilty." The court, on the same day, made the following order: " It is therefore considered by the court that the defendants J. C. Ball and R. E. Boutwell are guilty, as charged in the indictment herein, and as found by the jury; and it is ordered that they be remanded to the custody of the marshal, and be by him committed to the county jail of Lamar county, to await the judgment and sentence of the court. It is further ordered that the defendant M. F. Ball be discharged and go hence without day."

Afterwards, at the same term, John C. Ball and Robert E. Boutwell were adjudged guilty and sentenced to death, and sued out a writ of error from this court; and in the assignment of errors filed by them in the Circuit Court, (as appears by the record transmitted to this court in that case,) specified, among other things, " because no legal indictment was returned into court against respondents," in that the indictment on which they were tried "nowhere alleges when and where said William T. Box died;" and " for the errors stated and apparent upon the record herein, respondents pray that the judgment be reversed, and the cause remanded for a new trial." And the brief then filed in their behalf concluded by submitting that the judgment ought to be reversed, and the indictment dismissed.

Upon that writ of error, this court, at October term, 1890, held that that indictment, although sufficiently charging an assault, yet, by reason of failing to aver either the time or the place of the death of Box, was fatally defective, and would not support a sentence for murder; and therefore reversed the judgments against John C. Ball and Robert E. Boutwell, and remanded the case with directions to quash the indictment, and to take such further proceedings in relation to them as to

justice might appertain. *Ball* v. *United States*, 140 U. S. 118, 136.

At April term, 1891, of the Circuit Court, that indictment was dismissed; and the grand jury returned against all three defendants a new indictment, (being the one now before the court,) like the former one, except that, after charging the assault, with malice aforethought, and with a loaded gun, upon Box on June 26, 1889, in Pickens county in the Indian Territory, it went on to charge that the three defendants " did then and there shoot off and discharge the contents of said gun at, in and upon the body of said William T. Box, inflicting thereon a mortal wound, of which mortal wound the said William T. Box did languish, and languishing did then and there instantly die, and did then and there die within a year and a day after the infliction of the said mortal wound as aforesaid."

To this indictment the defendant Millard F. Ball filed a plea of former jeopardy and former acquittal, relying upon the trial, the verdict of acquittal, and the order of the court for his discharge, upon the former indictment ; a certified copy of the record of the proceedings upon which was annexed to and made part of his plea.

The defendants John C. Ball and Boutwell filed a plea of former jeopardy, by reason of their trial and conviction upon the former indictment, and of the dismissal of that indictment.

Both those pleas were overruled by the court, and the three defendants then severally pleaded not guilty.

At the trial, it appeared that William T. Box was killed on June 26, 1889 ; the defendants offered in evidence the record of the proceedings upon the former indictment; and it was admitted by all parties that the offence charged in the former indictment and that charged in the present indictment was one and the same transaction and offence, to wit, the killing of Box by the three defendants; that the defendants in the two indictments were the same persons ; and that no writ of error was ever sued out upon the judgment or order entered upon the former indictment as to Millard F. Ball.

The Circuit Court, among other instructions, instructed the jury to find against both pleas of former jeopardy, because

this court had decided that the former indictment was insufficient as an indictment for murder. The jury returned a verdict of guilty of murder against all three defendants; each of them was adjudged guilty accordingly, and sentenced to death; and thereupon they sued out this writ of error.

The first matter to be considered is the effect of the acquittal of Millard F. Ball by the jury upon the trial of the former indictment.

In England, an acquittal upon an indictment so defective that, if it had been objected to at the trial, or by motion in arrest of judgment, or by writ of error, it would not have supported any conviction or sentence, has generally been considered as insufficient to support a plea of former acquittal. 2 Hale P. C. 248, 394; 2 Hawk. P. C. c. 35, § 8; 1 Stark. Crim. Pl. (2d ed.) 320; 1 Chit. Crim. Law, 458; Archb. Crim. Pl. & Ev. (19th ed.) 143; 1 Russell on Crimes, (6th ed.) 48. And the general tendency of opinion in this country has been to the same effect. 3 Greenl. Ev. § 35; 1 Bishop's Crim. Law, § 1021, and cases there cited.

The foundation of that doctrine is *Vaux's case,* 4 Rep. 44, in which William Vaux, being duly indicted for the murder of Nicholas Ridley by persuading him to drink a poisoned potion, pleaded a former acquittal, the record of which set forth a similar indictment alleging that Ridley, not knowing that the potion was poisoned, but confiding in the persuasion of Vaux, took and drank (without saying "took and drank said potion"); a plea of not guilty; a special verdict, finding that Ridley was killed by taking the poison, and that Vaux was not present when he took it; and a judgment rendered thereon that the poisoning of Ridley and persuading him to take the poison, as found by the verdict, was not murder, and that the defendant go without day — *eat sine die.* Upon a hearing on the plea of *autrefois acquit,* the Court of Queen's Bench was of opinion that Vaux was a principal, although not present when Ridley took the poison; but that the indictment was insufficient, for not expressly alleging that Ridley drank the poison; and that " because the indictment in this case was insufficient, for this reason he was not *legitimo*

*modo acquietatus*," " nor was the life of the party, in the judgment of the law, ever in jeopardy."

Yet the decision in *Vaux's case* was treated, both by Lord Coke and by Lord Hale, as maintainable only upon the ground that the judgment upon the first indictment was *quod eat sine die*, which might be given as well for the insufficiency of the indictment, as for the defendant's not being guilty of the offence; and Lord Hale was clearly of opinion that a judgment *quod eat inde quietus* could not go to the insufficiency of the indictment, but must go to the matter of the verdict, and would be a perpetual discharge. 3 Inst. 214; 2 Hale P. C. 394, 395. And Mr. Starkie has observed: " The doctrine expounded in this case does not appear to consist with the general principle on which the plea of *autrefois acquit* is said to depend, since an acquittal upon a special verdict would leave the defendant exposed to a second prosecution, whenever a formal flaw could be detected in the first indictment at any subsequent period." 1 Stark. Crim. Pl. 320, note.

In the leading American case of *People* v. *Barrett*, 1 Johns. 66, while a majority of the court, consisting of Chief Justice Kent and Justices Thompson and Spencer, followed the English authorities, Justices Livingston and Tompkins strongly dissented, and their reasons were fully stated by Mr. Justice Livingston, who, after distinguishing cases in which upon the first trial there had been no general verdict of acquittal by the jury, but only a special verdict, upon which the court had discharged the defendant, as well as cases in which the defendant himself had suggested the imperfection in the first indictment, and thereupon obtained judgment in his favor, said: " These defendants have availed themselves of no such imperfection, if any there were, nor has any judgment to that effect been pronounced. This case, in short, presents the novel and unheard of spectacle, of a public officer, whose business it was to frame a correct bill, openly alleging his own inaccuracy or neglect, as a reason for a second trial, when it is not pretended that the merits were not fairly in issue on the first. That a party shall be deprived of the benefit of an acquittal by a jury, on a suggestion of this kind, coming too from the officer

who drew the indictment, seems not to comport with that universal and humane principle of criminal law, 'that no man shall be brought into danger more than once for the same offence.' It is very like permitting a party to take advantage of his own wrong. If this practice be tolerated, when are trials of the accused to end? If a conviction take place, whether an indictment be good, or otherwise, it is ten to one that judgment passes; for, if he read the bill, it is not probable he will have penetration enough to discern its defects. His counsel, if any be assigned to him, will be content with hearing the substance of the charge without looking farther; and the court will hardly, of its own accord, think it a duty to examine the indictment to detect errors in it. Many hundreds, perhaps, are now in the state prison on erroneous indictments, who, however, have been fairly tried on the merits. But reverse the case, and suppose an acquittal to take place, the prosecutor, if he be dissatisfied and bent on conviction, has nothing to do but to tell the court that his own indictment was good for nothing; that it has no venue, or is deficient in other particulars, and that, therefore, he has a right to a second chance of convicting the prisoner, and so on, *toties quoties.*" 1 Johns. 74.

In *Commonwealth* v. *Purchase*, 2 Pick. 521, 526, Chief Justice Parker, speaking of the doctrine which allows a man to be tried again after being acquitted on an indictment substantially bad, said that "ingenuity has suggested that he never was in jeopardy, because it is to be presumed that the court will discover the defect in time to prevent judgment;" but that this "is bottomed upon an assumed infallibility of the courts, which is not admitted in any other case."

In the Revised Statutes of Massachusetts of 1836, c. 123, §§ 4, 5, provisions were inserted, which, as the commissioners who reported them said, were "intended to define and determine, as far as may be, the cases in which a former acquittal shall, or shall not, be a bar to a subsequent prosecution for the same offence;" and were as follows: "No person shall be held to answer on a second indictment, for any offence of which he has been acquitted by the jury upon the facts and

merits, on a former trial; but such acquittal may be pleaded by him in bar of any subsequent prosecution for the same offence, notwithstanding any defect in the form or in the substance of the indictment on which he was acquitted. If any person, who is indicted for an offence, shall on his trial be acquitted upon the ground of a variance between the indictment and the proof, or upon any exception to the form or to the substance of the indictment, he may be arraigned again on a new indictment, and may be tried and convicted for the same offence, notwithstanding such former acquittal." Similar statutes have been passed in other States. 1 Lead. Crim. Cas. (2d ed.) 532.

The American decisions in which the English doctrine has been followed have been based upon the English authorities, with nothing added by way of reasoning.

After the full consideration which the importance of the question demands, that doctrine appears to us to be unsatisfactory in the grounds on which it proceeds, as well as unjust in its operation upon those accused of crime; and the question being now for the first time presented to this court, we are unable to resist the conclusion that a general verdict of acquittal upon the issue of not guilty to an indictment undertaking to charge murder, and not objected to before the verdict as insufficient in that respect, is a bar to a second indictment for the same killing.

The Constitution of the United States, in the Fifth Amendment, declares, "nor shall any person be subject to be twice put in jeopardy of life or limb." The prohibition is not against being twice punished, but against being twice put in jeopardy; and the accused, whether convicted or acquitted, is equally put in jeopardy at the first trial. An acquittal before a court having no jurisdiction is, of course, like all the proceedings in the case, absolutely void, and therefore no bar to subsequent indictment and trial in a court which has jurisdiction of the offence. *Commonwealth* v. *Peters*, 12 Met. 387; 2 Hawk. P. C. c. 35, § 3; 1 Bishop's Crim. Law, § 1028. But although the indictment was fatally defective, yet, if the court had jurisdiction of the cause and of the party, its judgment

is not void, but only voidable by writ of error; and, until so avoided, cannot be collaterally impeached. If the judgment is upon a verdict of guilty, and unreversed, it stands good, and warrants the punishment of the defendant accordingly, and he could not be discharged by a writ of *habeas corpus.* *Ex parte Parks,* 93 U. S. 18. If the judgment is upon an acquittal, the defendant, indeed, will not seek to have it reversed; and the government cannot. *United States* v. *Sanges,* 144 U. S. 310. But the fact that the judgment of a court having jurisdiction of the case is practically final affords no reason for allowing its validity and conclusiveness to be impugned in another case.

The former indictment set forth a charge of murder, although lacking the requisite fulness and precision. The verdict of the jury, after a trial upon the issue of guilty or not guilty, acquitted Millard F. Ball of the whole charge, of murder, as well as of any less offence included therein. Rev. Stat. § 1035. That he was thereupon discharged by the Circuit Court by reason of his acquittal by the jury, and not by reason of any insufficiency in the indictment, is clearly shown by the fact that the court, by the same order which discharged him, committed the other defendants, found guilty by the same verdict, to custody to await sentence, and afterwards adjudged them guilty and sentenced them to death upon that indictment. Millard F. Ball's acquittal by the verdict of the jury could not be deprived of its legitimate effect by the subsequent reversal by this court of the judgment against the other defendants upon the writ of error sued out by them only.

It is true that the verdict finding John C. Ball and Robert E. Boutwell guilty as charged in the indictment, and finding Millard F. Ball not guilty, was returned on Sunday; as well as that the order thereupon made by the court, by which it was considered that the first two defendants were guilty as charged in the indictment and found by the jury, and be remanded to custody to await the judgment and sentence of the court, and that Millard F. Ball be discharged and go without day, was made on the same day. That order, indeed, as al-

ready adjudged by this court, could not have effect as a judgment against the two defendants who had been convicted, because no judgment can lawfully be entered on Sunday. *Ball* v. *United States*, 140 U. S. 118, 131; 3 Bl. Com. 277. But when a case is committed to the jury on Saturday, their verdict may be received and the jury discharged on Sunday. This has been generally put upon the ground that the reception of the verdict and discharge of the jury is but a ministerial act, involving no judicial discretion; or that it is an act of necessity; and it certainly tends to promote the observance of the day more than would keeping the jury together until Monday. *Hoghtaling* v. *Osborn*, 15 Johns. 119; *Van Riper* v. *Van Riper*, 1 Southard, (4 N. J. Law,) 156; *Huidekoper* v. *Cotton*, 3 Watts, 56; *Baxter* v. *People*, 3 Gilman, 368, 385; *Hiller* v. *English*, 4 Strob. 486; *Cory* v. *Silcox*, 5 Indiana, 370; *Webber* v. *Merrill*, 34 N. H. 202; *Reid* v. *State*, 53 Alabama, 402; *Meece* v. *Commonwealth*, 78 Kentucky, 586, 588; *State* v. *Ford*, 37 La. Ann. 443, 466.

As to the defendant who had been acquitted by the verdict duly returned and received, the court could take no other action than to order his discharge. The verdict of acquittal was final, and could not be reviewed, on error or otherwise, without putting him twice in jeopardy, and thereby violating the Constitution. However it may be in England, in this country a verdict of acquittal, although not followed by any judgment, is a bar to a subsequent prosecution for the same offence. *United States* v. *Sanges*, 144 U. S. 310; *Commonwealth* v. *Tuck*, 20 Pick. 356, 365; *West* v. *State*, 2 Zabriskie, (22 N. J. Law,) 212, 231; 1 Lead. Crim. Cas. 532.

For these reasons, the verdict of acquittal was conclusive in favor of Millard F. Ball; and as to him the judgment must be reversed, and judgment rendered for him upon his plea of former acquittal.

It therefore becomes unnecessary to consider any of the other questions raised at the trial which affect Millard F. Ball only; and we proceed to consider those affecting the other defendants, John C. Ball and Robert E. Boutwell.

Their plea of former conviction cannot be sustained, because .

upon a writ of error sued out by themselves the judgment and sentence against them were reversed, and the indictment ordered to be dismissed. How far, if they had taken no steps to set aside the proceedings in the former case, the verdict and sentence therein could have been held to bar a new indictment against them need not be considered, because it is quite clear that a defendant, who procures a judgment against him upon an indictment to be set aside, may be tried anew upon the same indictment, or upon another indictment, for the same offence of which he had been convicted. *Hopt* v. *Utah*, 104 U. S. 631; 110 U. S. 574; 114 U. S. 488; 120 U. S. 430; *Regina* v. *Drury*, 3 Cox Crim. Cas. 544; *S. C.* 3 Car. & Kirw. 193; *Commonwealth* v. *Gould*, 12 Gray, 171. The court therefore rightly overruled their plea of former jeopardy; and cannot have prejudiced them by afterwards permitting them to put in evidence the former conviction, and instructing the jury that the plea was bad.

These two defendants moved that they be tried separately from Millard F. Ball, because he had been previously acquitted; because the government relied on his acts and declarations made after the killing and not in their presence or hearing; and because he was a material witness in their behalf. But the question whether defendants jointly indicted should be tried together or separately was a question resting in the sound discretion of the court below. *United States* v. *Marchant*, 12 Wheat. 480. It does not appear that there was any abuse of that discretion in ordering the three defendants to be tried together, or that the court did not duly limit the effect of any evidence introduced which was competent against one defendant and incompetent against the others. See *Sparf* v. *United States*, 156 U. S. 51, 58. On the contrary, upon the offer by the United States of evidence of declarations made by Millard F. Ball after the killing and not in the presence of the other defendants, and upon an objection to its admissibility against them, the court at once said, in the presence of the jury, that, of course, it would be only evidence against him, if he said anything; and the court was not afterwards requested to make any further ruling upon this point.

The exception to the restriction of the cross-examination of Cross and Berney, two material witnesses for the prosecution, cannot be sustained. The court permitted the defendants' counsel, for the purpose of showing bias and prejudice on the part of these witnesses, to ask them whether they had, at their own expense, employed another attorney to assist the District Attorney in the prosecution of this case; and they frankly answered that they had. That fact having been thus proved and admitted, the further question to one of them, "How much do you pay him?" might properly be excluded by the presiding judge as immaterial.

The government introduced evidence tending to show that Box was killed with low-mould buckshot, as he was going home through a cornfield late at night; that he had twelve wounds on his breast, collar bone and hips; that gun wadding was found close to his body; that he was shot with a double-barrelled, muzzle-loading gun, belonging to the defendant John C. Ball, and which had been in the marshal's exclusive control since the arrest of the defendants; and that this gun scattered low-mould buckshot badly. The defendants introduced evidence that the gun did not scatter such shot; and requested permission of the court to take the gun out and shoot it off in the presence of a deputy marshal, in order to test how it threw such shot. The court denied the request; and the defendants excepted to the denial. The granting or refusal of such a request, first made in the midst of the trial, was clearly within the discretion of the court.

The only grounds of the motion in arrest of judgment, which were argued in this court, were that the indictment did not allege that Box died of the wound charged to have been inflicted upon his body by the defendants; nor that he died at a place within the jurisdiction of the court. But the indictment alleged that the defendants, in Pickens county in the Indian Territory, on June 26, 1889, by shooting with a loaded gun, inflicted upon the body of Box "a mortal wound, of which mortal wound the said William T. Box did languish, and languishing did then and there instantly die." It was thus distinctly and unequivocally alleged that Box died of the

mortal wound alleged to have been inflicted by the defendants, and that he died at the time and place at which the mortal wound was inflicted.

The court overruled a motion of the defendants for a new trial, made upon the ground that the jury, from the time they were empanelled until they returned their verdict, were not in charge of a proper officer. At the hearing of this motion, it was admitted that the jury, during all the trial, were in charge of a deputy marshal of the United States for the district, who was not sworn as bailiff of this jury, and the only oath ever administered to whom was as deputy marshal many months before the trial; and "that the court instructed the jury in this case that they must not separate, must not talk to each other, and must not allow themselves to be talked to by any party on the outside, about this case." It would have been according to the more usual and regular practice, to administer a special oath to the officer put in charge of a jury. But the jury were in charge of a deputy marshal, who had, as such, taken an oath that he would "in all things well and truly, and without malice or partiality, perform the duties of the office of marshal's deputy." Rev. Stat. § 782. No objection to his taking charge of the jury without a new oath was made at any stage of the trial; the jury were duly cautioned by the court not to separate, nor to allow any other person to talk to them about the case; and there was nothing tending to show that the jury were exposed to any influence that might interfere with the impartial performance of their duties, or in any way prejudice the defendant. Such being the facts, the court was not obliged, as matter of law, to set aside the verdict because no special oath had been administered to the officer in charge of the jury.

No other question of law affecting the defendants John C. Ball and Robert E. Boutwell is presented by the copy of record submitted to this court, and which, by stipulation of counsel, has been agreed to contain everything that is material.

*Judgment reversed as to Millard F. Ball, and affirmed as to the other defendants.*