PEOPLE OF PUERTO RICO, Plaintiff and Appellant, v. BENITO CABRERA ET AL., Defendants and Appellees.

No. 5166. Argued April 3, 1934.—Decided July 11, 1934.

*Ricardo A. Gómez, Prosecuting Attorney,* for appellant. *Samuel R. Quiñones* and *R. H. Blondet* for appellees.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

The defendants are prosecuted for the commission of the offense defined and punished by Section 471 of the Penal Code, under the charge of wilfully selling to their son Santiago Cabrera two rural properties which they had already sold to Heirs of Huertas González, with the intent to defraud said previous purchaser.

The defendants pleaded not guilty and moved for a jury trial. At the hearing held on February 9, 1933, after offering evidence to show the original sale, the Prosecuting Attorney tried to show the existence of the second sale, and the following happened:

"Prosecuting Attorney: I offer in evidence the deed of purchase and sale in favor of the foster child, Santiago Cabrera . . .

"Mr. Quiñones: We object to the admission in evidence of the document, because it is not a copy of a Public Deed, not even the original is a Public Deed, because it is provided by law that when one of the parties is unable to sign, one of the witnesses signs for the party at his request. In this document there appears someone not a witness thereto signing for one of the parties. . . .

"     .     .     .     .     .     .     .     .     .     .

"Prosecuting Attorney: I will not discuss that point. Let us assume that this is a private document. Whatever it is, it is a sale and that is the only thing required by the Law of Evidence, more so when we attach to this deed a certificate of the registrar of property to the effect that said conveyance was recorded in the registry. Contracts shall be binding whatever may be the form in which they may have been executed. Thus, I offer the certificate of the Registrar of Property of San Juan, where it appears that this deed is duly recorded in the registry.

"The Court: But what about the deed, do you withdraw it?

"Prosecuting Attorney: I introduce it together with the certificate of the Registrar of Property of San Juan showing that this deed is duly recorded in the Registry of Property. And I will not argue whether the signature is necessary or not, or if the witness must appear in the instrument, because this question will be unduly extended. The fundamental question is that there was a sale, and that afterwards the defendants, with the intent to defraud, again sold the property to their legitimate son, and said legitimate son appears mortgaging said property to his brother. . . .

"      .      .      .      .      .      .      .      .      .      .

"The Court: After studying and giving due consideration to the motion of counsel for defendants as to the admissibility of the Public Deed offered this morning by the Prosecuting Attorney, the Court sustains the objection of the defendant and does not admit the deed, because it is not valid as a Public Document, and as such has no legal effect.

"Prosecuting attorney: I will move the court for a reconsideration of that ruling on grounds which I will state as soon as witness Santiago Cabrera testifies."

In effect, Santiago Cabrera, the alleged subsequent purchaser, was called to the witness stand, and when he was asked if he had any transaction with the defendants, counsel for defendants raised an objection, and the court settled the question as follows:

"Judge: This is a prosecution for a violation of Section 471 of the Penal Code, under the charge that the defendant sold certain properties which are described in the information to two different persons and on two different occasions. The first sale made to Huertas González was proven by a public deed, which was presented and admitted by the court over the objection of the defendants. Then they tried to prove the second sale by a deed which the court holds is void, inasmuch as the parties, or some parties, were not able to sign, and it was signed for them by a person not a witness to the instrument; and as repeatedly held by our Supreme Court, such documents are absolutely null and void.

"Now, in view of the nullity of the document, a fact admitted by the prosecuting attorney, it was sought to prove the second sale by means of testimonial evidence; and the point in issue is whether or not that contract of conveyance of real property, which the law

requires to appear in writing, can be proven by testimonial evidence disregarding the public instrument required by law. In our judgment, there are two different questions to be considered: the validity of the contract with regard to the parties thereto, and the proof of the contract. The contract might be binding, the contracting parties may compel each other to its fulfilment; but to prove said contract in a criminal action like the present one, the law then requires said proof to be given by public instruments and not by parol evidence.

"    .    .    .    .    .    .    .    .    .    .

"For the foregoing reasons the court sustains the objection raised by counsel for the defendants to the proof by parol evidence of the existence and execution of this second contract to which the information refers.

"Prosecuting Attorney: Inasmuch as the ruling of the court regarding this question practically destroys our case, and as your Honor knows that an order of Your Honor to the Jury for a directed verdict for defendants is appealable to the Supreme Court, with Your Honor's leave I am going to enter in the record what I intended to prove with witness Santiago Cabrera.

"The Prosecuting Attorney presents witness Santiago Cabrera to show that on or about July 12, 1932, he agreed with defendant Benito Cabrera and defendant María Secundina García to buy the two properties described under letter A and letter B in the deed which I now request to be marked by the clerk as evidence offered by the Prosecuting Attorney and not admitted by the court, and which has been marked by the Clerk as Exhibit 1, offered by the Prosecuting Attorney and not admitted by the Court. The Prosecuting Attorney also intends to introduce in evidence a certificate of the Registrar of Property with regard to the record of the purchase and sale referred to in Exhibit 1 of the prosecution, as evidence offered by the Prosecuting Attorney and not admitted by the court, and also denied by the court, and which was marked by the court as Exhibit 2 of evidence offered by the prosecution and not admitted by the court.

". . . Witness Santiago Cabrera was to testify that he had agreed to buy those two properties from the defendants for $12,000, and that in the same moment he had mortgaged for $2,000.00 to his brother the two properties referred to, and duly described in public deed No. 245 which was the one offered in evidence by the Prosecuting Attorney and which was not admitted by the court. The court refused to admit parol evidence as to the contract of purchase and

sale between Santiago Cabrera and the defendants, the parol evidence regarding the existence of the contract of purchase and sale between Santiago Cabrera and Secundina García.

"To that ruling of the court the Prosecuting Attorney respectfully takes an exception. . . . The prosecution rests."

Then, counsel for defendants moved the court to direct verdict for defendants, and the court granted the motion as follows:

"The court: Gentlemen of the Jury: As in the instant case, it was the duty of the prosecution to prove that there were two sales, and as according to the opinion of the court, the Prosecuting Attorney has failed to show the last sale, which if proven, will constitute the offense of a double sale, that is, the offense defined in Section 471 of the Penal Code, there is no question to be submitted to the Jury, but only to direct the Jury to enter a verdict of acquittal inasmuch as the evidence will never suffice to sustain a verdict of conviction. The Court instructs the jury to enter a verdict of acquittal and for that purpose it appoints Mr. Astol president of the jury and directs him to sign the verdict."

The verdict rendered by the jury was received by the Court and the defendants were discharged.

On the same date, February 9, the People took the present appeal thru the Prosecuting Attorney, in accordance with the provisions of paragraph 6, Section 348 of the Code of Criminal Procedure, which reads as follows:

"Sec. 348.—An appeal may be taken by The People:

" . . . . . . . . . . .

"6.—From an order of the court directing the jury to find for the defendant."

In our judgment, the order of the court directing the jury to find for the defendants based on its rulings about the inadmissibility of the evidence introduced by the prosecuting attorney is erroneous.

■ Section 471 of the Penal Code, which defines and punishes the offense for which the defendants are charged, reads as follows:

"Art. 471. Every person who, after once selling, bartering or disposing of any property, real or personal, or interest therein, or after executing any bond or agreement for the sale of any such property, again wilfully and with intent to defraud previous or subsequent purchasers, sells, barters, or disposes of the same property, or any part thereof, or interest therein, or wilfully and with intent to defraud previous or subsequent purchasers executes any bond or agreement to sell, barter, or dispose of the same property, or any part thereof, or interest therein, to any other person for a valuable consideration, is punishable by imprisonment in the penitentiary not less than one nor more than ten years."

With regard to the first sale there is no question. With regard to the second, the Prosecuting Attorney was precluded from proving it because the Public Deed wherein the sale was embodied was signed for the vendors who were unable to sign by a person not a witness thereto.

It is true that the notarial law definitely provides that should the parties to the instrument, or any of them, be unable to sign, the notary shall state the fact, and one of the witnesses shall sign for the party, and such witness shall precede his signature with the note in his own handwriting that he signs for himself and for the party, in the name of said party or parties. Section 14 of the Notarial Act of 1906.

And it is also true that this Court held that if the signature of one of the parties to a public instrument does not appear in the manner prescribed by the statute, it is equivalent to the non-existence of his signature, and therefore the document should be considered as null and void, pursuant to Subsection 3 of Section 20 of the Notarial Law. *Banco Territorial y Agrícola* v. *Registrar of San Juan*, 22 P.R.R. 545.

But that does not mean that the contract as such did not exist because the document wherein it is embodied was not executed in accordance with law. If there was the consent of the contracting parties, a definite object, and a cause, there was a contract. And to show those elements the deed could and should have been admitted as a piece of evidence

to be completed by the evidence of the witnesses. That also applies to the certificate of the Registrar.

The criminal act charged to the defendants substantially consists in the reselling of a property previously sold to another person, wilfully and with the intent to defraud the previous purchaser. And the evidence sought to be introduced in this case by the prosecuting attorney was for the purpose of showing that the defendants, having already conveyed the properties in question to a person in payment of certain debts they had with said person, again sold them to their son who took the public document where in said contract appeared to the Registry and succeeded in having it recorded by the Registrar before the presentation for record of the title conveyed to the first purchaser, an act which according to the provisions of Section 1362 of the Civil Code (1930 ed.) decided the question of the double sale in his favor.

The intent to defraud would not disappear by the fact that the public document executed later on appeared to be void. The document was executed, and not only was executed but also recorded in the Registry. To obtain a record of his purchase the original purchaser would be forced to move the contracting parties of the second contract for the voluntary execution of another document setting aside the one already recorded or to bring judicial action for the annulment of the second contract and for the cancellation of its record in the Registry. The situation may be further deranged by the appearance on the stage of third persons acquiring from the record owner according to the Registry.

In view of the above conclusions it would seem that the order appealed from should be reversed, as should also be reversed the judgment of acquittal which was a consequence thereof.

But, however erroneous the order might be, the truth is that the jury complied therewith and rendered a verdict of acquittal, and that thereupon the court entered judgment dis-

charging the defendants. And in a similar situation this Court held in *People* v. *Noonan*, 46 P.R.R. 700 that the cause was finally disposed of and that no further action lay.

It does not matter that the question is not raised in this case. It is a fundamental question and to prevent further and unnecessary proceedings, it must be settled now.

Consequently, notwithstanding our conclusion about the error of the court in giving said order, as its reversal would have no practical value, we will limit ourselves to dismiss the appeal taken by the Prosecuting Attorney as academic.

#### DISSENTING OPINION BY MR. JUSTICE CORDOVA DAVILA

This Court, in the case of *People* v. *Noonan*, recently decided (46 P.R.R. 700) upholds the theory that a defendant once acquitted by virtue of a peremptory order of a court, the case is definitely settled, and that there can be no new trial for the prosecution of the same offense charged in the information. We agreed to the opinion delivered in said case, overwhelmed rather than convinced by repeated decisions of the Supreme Court of California, and especially by the conclusions reached in the case of *Kepner* v. *U. S.*, 195 U. S. 134, cited and commented in our opinion.

However, we are not bound to follow the trend of thought of the Supreme Court of California in construing provisions of law in force in Puerto Rico if the conclusions of the said Court are in our judgment erroneous. As to the Supreme Court of United States, it is our duty and we are bound to obey and respect its decisions construing provisions of law in force in our island. With the foregoing, we will express our opinion on this very important matter which some day might be brought again to the consideration of the highest court of the nation.

The case at bar directs our attention once more to the holdings in *Kepner* v. *U.S.*, *supra*, from the delivery of the

original judgment to its review by the Supreme Court of the United States. Thomas E. Kepner, a practicing lawyer in the city of Manila was charged with the embezzlement of the funds of a client. The court of first instance acquitted the said lawyer. The Government appealed from that judgment. The Supreme Court of the Philippine Islands reversed the judgment of the lower court, found Kepner guilty and sentenced him to a term of imprisonment of one year, eight months and twenty-one days, suspended him from any public office or place of trust, and deprived him of the right of suffrage. This case may be distinguished from the one before us in that it was not tried before a jury but before a law court without jury which weighed the evidence and decreed the acquittal of the defendant. In the case before us there was an error of law, committed by the lower court in improperly refusing t oadmit a certain evidence and in directing a verdict for defendants.

In the case of *Kepner* v. *U.S., supra,* it does not appear that the Manila Court of first instance which rendered the original judgment were induced to error, and perhaps this might be another reason to distinguish this case from those where the defendant himself procures the error. However, this distinction would have to be established on the proposition that the defendant can successfully plead double jeopardy only when the erroneous decision of the court has not been caused by him. That is not the holding of the Supreme Court of California. When a jury acquits a defendant upon the order of a court, though said acquittal were due to a gross and manifest error caused by the defendant himself, the California Court upholds the theory that a reversal of the judgment would be of no practical value, because the defendant can not be tried again for the same offense. However, this same defendant, if he moves for and obtains the vacation of the judgment or verdict entered against him, can be prosecuted again for the same offense. *Hopt* v. *Utah* 104 U.S. 631, 110 U.S. 574, 114 U.S. 488, 120 U.S. 430; *Regina* v.

*Drury,* 3 Cox Crim. Cas. 544; S.C. 3 Car. & Kirv. 193; *Commonwealth* v. *Gould,* 12 Gray 171. Therefore, under that theory the defendant occupies a position doubly advantageous, because if he is acquitted he is under the constitutional protestion against double jeopardy, and if he is convicted he can move to set aside the verdict or judgment and he will get a new trial after a conviction. Such a distinction does not seem to be supported by logic. If the plea of former jeopardy prevents another action when the defendant is acquitted by virtue of a mistake of law committed by the court of first instance, it would also be a bar to another prosecution when a verdict or judgment against him is set aside at his request because of a mistake that did him harm. However, the courts maintain that in the latter case a defense of former jeopardy will not lie and if that is so, and the rule is based on the fact that the defendant himself moved to set aside the judgment or verdict, in our opinion, logically, the same rule should be applied when the defendant induces the court to a mistake of law which causes his acquittal. In the presence of the same reason, the same law should be applied. It seems advisable to state the fact that Mr. Justice Holmes, as constitutional right might be waived. The eminent juris is of opinion that the defendant waives no right because there is no double jeopardy when he is retried in the same case.

There is no doubt that under these conditions the position of the Government is very disadvantageous. The mistakes of law against the defendant can be reviewed by higher courts to give the convict another chance to be tried, if the acts charged constitute a public offense, but mistakes of law against the Government can not be corrected even when the statute gives the right to take exceptions and appeal to the Government. The provisions of law to protect the rights of the Government would be rendered vain and completely ineffectual in practice, because there is no possibility of enforcing them. We can not explain to ourselves how a

new trial can be granted to a defendant when gross mistakes are committed against him, and not when fundamental errors of law are committed against the Government. The opinions delivered by the majority and the minority in the case of *Kepner* v. *U.S., supra,* should be carefully studied. In the opinion of the minority, written by Mr. Justice Holmes, it is said that a defendant can not waive, and certainly will not be taken to waive without meaning it, fundamental constitutional rights. According to the eminent jurist there is jeopardy from the beginning to the end of a cause, and the case does not end until it is finally decided. The proceeding is only one and a continuation of the same case, ending when the judgment of conviction or acquittal becomes final because of the expiration of the time to appeal, when there is a right to appeal, or when the case is finally decided by a court of last resort. Justice Holmes is of the opinion that the defendant might be tried more than once in the same cause. The constitutional provision forbids a trial in a new and independent case where a man already has been tried once.

In *Kepner* v. *U.S., supra,* the court of first instance acquitted the defendant. The prosecuting attorney took an appeal under a statute providing for the right of appeal. The Supreme Court of the Philippine Islands reversed the judgment and found the defendant guilty. The case was taken to the Supreme Court of the United States by a writ of error. The judgment was reversed and the defendant discharged. The case was decided by the majority votes of five justices against four. Justices Holmes, White, McKenna and Brown dissented. Two dissenting opinions were written. The first one, written by Justice Holmes, Justice White and Justice McKenna concurring, says as follows:

"I regret that I am unable to agree with the decision of the majority of the court. The case is of great importance, not only in its immediate bearing upon the administration of justice in the Philippines, but, since the words used in the Act of Congress are

also in the Constitution, even more because the decision necessarily will carry with it an interpretation of the latter instrument. If, as is possible, the constitutional prohibition should be extended to misdemeanors, *Ex parte Lange,* 18 Wall. 163, 173, we shall have fastened upon the country a doctrine covering the whole criminal law, which, it seems to me, will have serious and evil consequences. At the present time, in this country, there is more danger that criminals will escape justice than that they will be subjected to tyranny. But I do not stop to consider or to state the consequences in detail, as such considerations are not supposed to be entertained by judges, except as inclining them to one of two interpretations, or as a tacit last resort in case of doubt. It is more pertinent to observe that it seems to me that logically and rationally a man cannot be said to be more than once in jeopardy in the same cause, however often he may be tried. The jeopardy is one continuing jeopardy from its beginning to the end of the cause. Everybody agrees that the principle in its origin was a rule forbidding a trial in a new and independent case where a man already had been tried once. But there is no rule that a man may not be tried twice in the same case. It has been decided by this court that he may be tried a second time, even for his life, if the jury disagree, *United States* v. *Pérez,* 9 Wheat. 579; see *Simmons* v. *United States,* 142 U. S. 148; *Logan* v. *United States,* 144 U. S. 263; *Thompson* v. *United States,* 155 U. S. 271, or notwithstanding their agreement and verdict, if the verdict is set aside on the prisoner's exceptions for error in the trial. *Hopt* v. *People,* 104 U. S. 631, 635, 110 U. S. 574; 114 U. S. 488, 492; 120 U. S. 430, 442; *United States* v. *Ball,* 163 U. S. 662, 672. He even may be tried on a new indictment if the judgment on the first is arrested upon motion. *Ex parte Lange,* 18 Wall. 163, 174; 1 Bish. Crim. Law (5th ed.), sec. 998. I may refer further to the opinions of Kent and Curtis in *People* v. *Olcott,* 2 Johns. Cas. 301; S. C., 2 Day, 507, n.; *United States* v. *Morris,* 1 Curtis, 23, and to the well-reasoned decision in *State* v. *Lee,* 65 Connecticut, 265.

"If a statute should give the right to take exceptions to the Government, I believe it would be impossible to maintain that the prisoner would be protected by the Constitution from being tried again. He no more would be put in jeopardy a second time when retried because of a mistake of law in his favor, than he would be when retried for a mistake that did him harm. It cannot matter that the prisoner procured the second trial. In a capital case, like *Hopt* v. *People,* a man cannot waive, and certainly will not be taken to waive without meaning it, fundamental constitutional rights.

*Thompson* v. *Utah,* 170 U. S. 343, 353, 354. Usually no such waiver is expressed or thought of. Moreover it cannot be imagined that the law would deny to a prisoner the correction of a fatal error, unless he should waive other rights so important as to be saved by an express clause in the Constitution of the United States.

"It might be said that when the prisoner takes exceptions he only is trying to get rid of a jeopardy that already exists—that so far as the verdict is in his favor, as when he is found guilty of manslaughter upon an indictment for murder, according to some decisions he will keep it and can be retried only for the less ·offense, so that the jeopardy only is continued to the extent that it already has been determined against him, and is continued with a chance of escape. I believe the decisions referred to be wrong, but, assuming them to be right, we must consider his position at the moment when his exceptions are sustained. The first verdict has been set aside. The jeopardy created by that is at an end, and the question is what shall be done with the prisoner. Since at that moment he no longer is in jeopardy from the first verdict, if a second trial in the same case is a second jeopardy even as to the less offense, he has a right to go free. In view of these difficulties it has been argued that on principle he has that right if a mistake of law is committed at the first trial. I Bish. Crim. Law (5th ed.), Sections 999, 1047. But even Mr. Bishop admits that the decisions are otherwise, and the point is settled in this court by the cases cited above. That fetish happily being destroyed, the necessary alternative is that the Constitution permits a second ·trial in the same case. The reason, however, is not the fiction that a man is not in jeopardy in case of a misdirection, for it must be admitted that he is in jeopardy, even when the error is patent on the face of the record, as when he is, tried on a defective indictment, if judgment is not arrested. *United States* v. *Ball,* 163 U. S. 662. Moreover, if the fiction were true, it would be equally true when the misdirection was in favor of the prisoner. The reason, I submit, is that there can be but one jeopardy in one case. I have seen no other, except the suggestion of waiver, and that I think cannot stand.

"If what I have said so far is correct, no additional argument is necessary to show that a statute may authorize an appeal by the Government from the decision by a magistrate to a higher court, as well as an appeal by the prisoner. The latter is every day practice, yet there is no doubt that the prisoner is in jeopardy at the

trial before the magistrate, and that a conviction or acquittal not appealed from would be a bar to a second prosecution. That is what was decided, and it is all that was decided or intimated, relevant to this case, in *Wemyss* v. *Hopkins,* L. R. 10 Q. B. 378. For the reasons which I have stated already, a second trial in the same case must be regarded as only a continuation of the jeopardy which began with the trial below.''

The opinion of Mr. Justice Brown follows:

''Under our Anglo-Saxon system of jurisprudence I have always supposed that a verdict of acquittal upon a valid indictment terminated the jeopardy, that no further proceedings for a review could be taken either in the same or in an appellate court, and that it was extremely doubtful whether even Congress could constitutionally authorize such review.

''Conceding all this, however, I think that in applying the principle to the Philippine Islands, Congress intended to use the words in the sense in which they had theretofore been understood in those Islands. By that law, in which trial by jury was unknown, the jeopardy did not terminate, if appeal were taken to the audiencia or Supreme Court, until that body had acted upon the case. The proceedings before the court of first instance were in all important cases reviewable by the Supreme Court upon appeal, which acted finally upon the case and terminated the jeopardy. This was evidently the view of the military commander in General Order, No. 58, and of the Philippine Commission in the act of August 10, 1901, (No. 194) in both of which an appeal to the Supreme Court was contemplated, even after a judgment of acquittal. I think this also must have been the intention of Congress, particularly in view of sec. 9 of the Philippine act of July 1, 1902, which provided that 'the Supreme Court and the courts of first instance of the Philippine Islands shall possess and exercise jurisdiction *as heretofore provided* . . . . subject to the power of said government to change the practice and method of procedure.' It seems to me impossible to supose that Congress intended to place in the hands of a single judge the great and dangerous power of finally acquitting the most notorious criminals.''

Mr. Justice Brown refers to an act of Congress, approved in 1902, providing for a civil government for the Philippine Islands, which act provided among other things for immunity

from double jeopardy for the same criminal offense. As aforesaid, the Philippine statute granted the right of appeal both to the Government and to the defendant. The majority of the court held that said statute was repealed by the Act of Congress providing immunity from double jeopardy for the same criminal offense. The dissenting opinion of Mr. Justice Brown endeavors to harmonize the Philippine statute with the Act of Congress. In the opinion of the majority of the Court some provisions of the *Fuero Real* and of the *Siete Partidas* are cited, whereby a man acquitted by a valid judgment of any offense of which he has been accused, can not be accused afterwards for the same offense except in certain cases. Under that system of law, according to the majority, the trial was regarded as one continuous proceeding, and the protection given was against a second conviction after this final trial had been concluded in due form of law. It should be noticed that this doctrine comes very near to the theory upheld by the opinion of the minority written by Mr. Justice Holmes.

The case of *People* v. *Noonan* and the one now before us, are examples of the unfavorable position of the Government to defend the rights entrusted to it. To us it is clear that the court erred in both cases. We agree with the conclusions established in the opinion delivered by Mr. Chief Justice del Toro in the case at bar as to the error of the court in refusing to admit certain evidence and in directing the acquittal of the defendant.

In the case of *People* v. *Noonan,* the People offered evidence to show that on November 5, 1930, around one or two o'clock in the afternoon, a truck belonging to the Porto Rican Express Co. carrying certain boxes of merchandise was traveling from the Condado to San Juan by the "Dos Hermanos" bridge over the Condado Bay; that said truck was driven by Antonio Cruz Jiménez; that Carmelo Torres and Santiago Rodríguez also traveled in said truck, sitting on the boxes, the former looking forward and the latter to the rear;

that the truck was going by the right side of the bridge, the one corresponding to it; that when the truck had gone over one-fourth of the bridge there appeared in rear of the truck and traveling in its same direction a touring car driven at high speed by the defendant, which on passing the truck collided with it with terrific force and sent the truck with a somersault into the bay, facing the Condado; that the truck and all its occupants fell into the water, Torres and Rodríguez came out seriously injured, and the driver Antonio Cruz Jiménez dead because of the injuries received when he was caught under the truck in its fall.

The above evidence clearly shows that the lower court erred in directing the acquittal of the defendant. Said evidence should have been sumitted to a jury, the sole judge called upon to decide questions of fact and to determine the credibility of witnesses. The weight of the evidence is a question to be decided by the judges of facts and not by the trial judge, who should only settle questions of law submitted to him.

The State of California does not give the judges the power to direct verdict for defendant. There the judge must limit himself to suggest the acquittal of the defendant. The jury is free to act as it deems convenient, notwithstanding the suggestion of the trial judge. Section 257 of the Code of Criminal Procedure empowers the court to peremptorily instruct the jury to acquit the defendant. If the mission of the jury is simply to obey, we must agree that its functions as a deliberative body end when it becomes a mere executor of the will of the court. In these circumstances, though the verdict is signed by the jury, the truth is that the acquittal is decreed by the judge.

Mr. Justice Brown expresses his astonishment, and even considers impossible to suppose that Congress intended to place in the hands of a single judge the great and dangerous power of finally acquitting the most notorious criminal. The spirit of American institutions is to protect the innocent man,

not to give immunity to the guilty man. The theory of former jeopardy endeavors to prevent prosecution from becoming persecution, not to preclude the state from continuing a cause to its final decision by appellate courts through lawful means. We repeat that the case of *Kepner* v. *U. S.*, *supra*, is not equal to the one now before us. The Supreme Court of the United States does not hold that when a verdict of not-guilty is entered by the jury upon peremptory instructions of the court, the right of appeal can not be resorted to when it is granted by statute to correct by a new trial a manifest error committed against the state, as when a verdict or a judgment is set aside at defendant's own motion. In the Kepner case the court of first instance entered a judgment of acquittal after considering the facts and applying the law; in the instant case the evidence could not be weighed by the judges of facts called upon to enter a verdict.