OPINION AND JUDGMENT ENTRY
This is an appeal from: 1) a September 16, 1998 judgment of the Sandusky County Court of Common Pleas, Juvenile Division, in which the court rejected a magistrate's report dismissing rape charges against appellant, Donald M., and found appellant delinquent; and 2) a November 12, 1998 judgment entry of the Sandusky County Court of Common Pleas in which the court sentenced appellant to serve a minimum of one year in the custody of the Department of Youth Services("DYS"). Appellant has presented two assignments of error for review that are:
 "1. The Trial Court erred to the prejudice of Appellant when it reversed its own Judgment Entry dismissing the complaint by granting the State's Objections and finding Appellant delinquent of rape in violation of the Double Jeopardy clauses of the Fifth and Fourteenth Amendment to the Constitution of United States and Article 1, Section 10
of the Constitution of the State of Ohio.
 "2. The Trial Court erred to the prejudice of Appellant when it reviewed the audio recording of the entire Adjudicatory Hearing in violation Juv.R. 40(E)(4)(b)."
Before we address the assignments of error and the arguments presented in support and in opposition to them, we review the facts and procedure in this case.
On January 23, 1998, a complaint was filed in the Sandusky County Court of Common Pleas, Juvenile Division, charging appellant with raping a six year old female in violation of R.C.2907.02(A)(1)(b). On May 13, 1998, a magistrate's report and judgment entry was filed. The judgment entry was a two-page form. On the first page the magistrate put a check mark in a bracket box next to the word "Dismissed". The magistrate signed the report on May 5, 1998.
Just below the check mark and the magistrate's signature the following statement appears: "A party may file written objections to this Magistrate's Report within 14 days of its filing." Immediately below that statement the form provided:
 "Reviewed and [_] adopted [_] adopted with modification attached; [_] rejected. and judgment entered."
 The trial court put a check mark in the box before the word "adopted". The trial judge signed and dated the entry on May 6, 1998. A box on the form contains the notation that the entry was journalized on May 13, 1998. The form also has a line that reads: "copy mailed to [_] child/parent/custodian, [_] Attorney [_] Prosecutor. Check marks appear in the bracket boxes before the first two categories, but not in the bracket box before the word "Prosecutor".
On June 5, 1998, appellee, the state of Ohio, filed a motion for leave to file objections to the magistrate's report. Appellee argued that it first received the report and the court's judgment entry adopting the report on June 3, 1998 "despite previous repeated requests for same." On June 17, 1998, appellee filed objections to the magistrate's report and a motion for reversal.
On September 16, 1998, the trial court filed a judgment entry in which it said: "Based upon a careful review of the recordings of the entire proceedings and after careful consideration to the testimony presented by the parties at the adjudicatory hearing held on May 4 5 1998, the Court rejects the Magistrate's Report and enters the following findings of fact: * * *." (emphasis sic). The court entered findings of fact and found appellant delinquent for a commission of rape. The case was continued for disposition.
On November 16, 1998, the court filed its dispositional order. The court placed appellant in the custody of the DYS for a minimum of one year. Appellant subsequently filed this appeal.
In support of his first assignment of error, appellant argues that the trial court violated his constitutional double jeopardy protections. Appellant says the magistrate's decision dismissing the charges against him and discharging him was effective on the date it was adopted and journalized by the trial court, May 13, 1998. He says that the trial court could adopt the magistrate's decision without first waiting for fourteen days to see if appellee filed objections, because pursuant to Juv.R. 40, if appellee filed timely objections the court's decision adopting the magistrate's decision would be stayed.
Appellant says that timely objections must be filed within fourteen days from the date the magistrate's decision is filed. He says in this case, the deadline for filing objections was May 27, 1998. Appellee did not file any objections until June 1998. Therefore, appellant argues that the trial court had no remaining jurisdiction to reopen the decision, reverse an acquittal, and find him delinquent.
Appellee responds that it was entitled to due process and the trial court did not err when it allowed appellee to file objections past the fourteen day limit set in Juv.R. 40. Appellee says it must be given an opportunity to file objections and the opportunity cannot be taken away just because a clerk of court failed to timely serve it with notice of a judgment.
In 1995, the Tenth District Court of Appeals considered a similar case. In the Matter of: Kettapong [P.], (Nov. 14, 1995), Franklin App. No. 95APF05-539, unreported. In that case, a referee filed a report recommending that all charges filed against a juvenile be dismissed because the state failed to present evidence to support all of the elements of the crimes.
The trial court adopted the referee's report after "noting that it had conducted a careful and independent examination and analysis as to the correctness of the referee's report * * *." Id. Three days after the trial court adopted the referee's report, the state filed objections. The trial court then "reversed itself, sustained the state's objection, and rejected the report and recommendation of the referee." Id.
On appeal, the juvenile argued that the trial court violated his constitutional double jeopardy protections. The appellate court quoted the relevant portions of the version of Juv.R. 40 then in effect[1] which read:
"`(D) Report.
"`* * *
 "`(2) Objections to report. Within fourteen days of the filing of the report, a party may serve and file written objections to the referee's report. The objections shall be considered a motion. Objections shall be specific and state with particularity the grounds of objection. Upon consideration of the objections, the court may adopt, reject, or modify the report; hear additional evidence; return the report to the referee with instructions; or hear the matter itself.
"`* * *
 "(5) When effective. The report of a referee shall be effective and binding only when approved and entered as a matter of record by the court. The referee's findings of fact must be sufficient for the court to make an independent analysis of the issues and to apply appropriate rules of law in reaching a judgment order. The court may adopt the referee's recommendations about appropriate conclusions of law and the appropriate resolution of any issues. However, the court shall determine whether there is any error of law or other defect on the face of the referee's report even if no party objects to an error or defect. The court shall enter its own judgment on the issues submitted for action and report by the referee.
"`* * *
 "`(7) Permanent and interim orders. The court may enter judgment on the basis of findings of fact contained in the referee's report without waiting for timely objections by the parties, but the filing of timely written objections to the referee's report shall operate as an automatic stay of execution of that judgment until the court disposes of those objections and thereby vacates, modifies, or adheres to the judgment previously entered. The court may make an interim order on the basis of the findings of facts contained in the referee's report without waiting for or ruling on timely objections by the parties where immediate relief is justified. An interim order shall not be subject to the automatic stay caused by the filing of timely objections to the report. An interim order shall not extend more than twenty-eight days, from the date of its entry unless, within that time and for good cause shown, the court extends the interim order for an additional twenty-eight days.'" Id. quoting Juv.R. 40.
The Tenth District then ruled:
 "Although the state characterizes the October 24, 1994 judgment entry as an interim order, we find nothing in the record to support such a characterization. The October 24, 1994 order was titled `Judgment Entry,' and the term `interim' appears nowhere on the document.
 "Even though the trial court entered judgment prior to the expiration of the fourteen-day period provided in Juv.R. 40(D)(7), the entry itself indicates that the trial court conducted its own independent analysis of the referee's report, specifically adopted the referee's findings as its own, and entered judgment on October 24, 1994. Because the court conducted its own independent review and analysis, under the provisions of Juv.R. 40(D)(5), the referee's report became effective and binding when it was approved and entered as a matter of record by the court. This is true regardless of whether the judgment was an `interim judgment' or a final judgment. As the state itself apparently concedes, the signature of the judge gives effect to the referee's report. (Appellee's brief at 4.)
"* * *
 "Thus, regardless of the label, we believe the court's October 24, 1994 judgment entry adopting the referee's report was an adjudication of the factual and legal issues, effective and binding when approved and entered as a matter of record by the court pursuant to Juv.R. 40(D)(5). In our view, to permit the court to then vacate its judgment and enter an adjudication of delinquency violates principles of double jeopardy.
 "Historically, it is the area of acquittals that has received the United States Supreme Court's most intense scrutiny under the Double Jeopardy Clause. `Perhaps that most fundamental rule in the history of double jeopardy jurisprudence has been that `[a] verdict of acquittal . . . could not be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy, and thereby violating the Constitution.' Martin Linen Supply, supra, at 564, 1354, quoting United States v. Ball (1896), 163 U.S. 662, 671, 16 S.Ct. 1192, 1195, 41 L.Ed. 300. `An acquittal is afforded special weight.' United States v. DiFrancesco
(1980), 449 U.S. 117, 129, 101 S.Ct. 426, 433, 66 L Ed. 2d 328. The law `attaches particular significance to an acquittal.' United States v. Scott (1978), 437 U.S. 82, 91, 98 S.Ct. 2187, 2194, 57 L.Ed.2d 65.
"* * *
 "In the present case, the court, which had the power to adjudicate appellant a delinquent minor and impose punishment, entered a judgment in favor of the accused. We are persuaded that, permitting the trial court to revisit and re-adjudicate the issues after it had independently reviewed the evidence and conclusions of the referee and entered judgment provided the prosecution the forbidden `second crack.' Therefore, the trial court's adjudication of delinquency following its initial finding that the state had failed to prove beyond a doubt that appellant was guilty of carrying a concealed weapon violated appellant's rights under the Double Jeopardy Clause.
 "Appellant does not argue, and we do not reach the issue of whether Juv.R. 40(D)(7) is unconstitutional on its face. The rule does not mandate the court to enter a judgment, interim or otherwise, before the period for objections expires. There is no constitutional impediment to the court's power to modify its decisions, provided such a modification does not subject an individual to double jeopardy. (See In re Lionel F. (Ct. of Appeals New York 1990), 76 N.Y.2d 747, 558 N.E.2d 30, 559 N.Y.S. 2d 228, certiorari denied 498 U.S. 923, 111 S.Ct. 304, 112 L.Ed.2d 257 (court entertained reargument and reversed its earlier ruling of dismissal while the proceeding was still pending and before the evidence was closed). Our decision is limited to the facts." Id.
We are persuaded that the same reasoning applied by the Tenth District Court of Appeals applies in this case.
We note there are some facts that are distinguishable. For instance, in this case the trial court admitted it did not carefully review the record before it adopted the magistrate's decision and dismissed the charges against appellant.[2] In addition, the prosecutor did not receive any service of the judgment and was unable to timely file objections to the court's ruling.[3] However, we find that these differences do not change the reality that the trial court, however unadvisedly, entered an acquittal, which triggered the double jeopardy protections in both the federal and state constitutions.
The lynchpin to this case is that an acquittal is particularly regarded in American jurisprudence as invoking double jeopardy protections. For that reason, the procedure set forth in Juv.R. 40, permitting a court to adopt a magistrate's decision and to later reconsider that ruling if a party files timely objections, is suspended when a court adopts a magistrate's decision to dismiss a case and to discharge a juvenile and journalizes its decision. The trial court cannot then reconsider the dismissal and discharge, even if the state files timely objections. Accordingly, appellee lost its right to file objections to the magistrate's decision and to have them considered by the trial court when the trial court made a decision to summarily adopt the magistrate's decision, without waiting until service of that decision was made to all parties and fourteen days had passed. Appellee's arguments are therefore unpersuasive even if this court assumes arguendo that appellee is correct that under due process it was entitled to an extension of time to file objections because it did not receive notice of the court's judgment. Accordingly, appellant's first assignment of error is well-taken.
Our disposition of the first assignment of error renders the second assignment of error moot.
This court is distressed by an outcome that permits appellant to "walk free" from the charges brought against him because the trial court believed it could summarily adopt a magistrate's decision dismissing those charges without first carefully reviewing the basis of the magistrate's decision. The trial court was clearly mistaken, and the state and the six-year old child who was allegedly raped by appellant must pay the price for the trial court's actions. This kind of situation can be avoided from ever occurring again if the trial court stops rushing to adopt magistrate decisions without first ensuring service of that decision has been made and the time for objections to the decision has passed.
The judgment of the Sandusky County Court of Common Pleas, Juvenile Division, finding appellant delinquent and ordering his commitment to DYS is reversed. This case is remanded for further proceedings consistent with this opinion. Costs to appellee.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 Peter M. Handwork, P.J. _______________________________ JUDGE Melvin L. Resnick, J. _______________________________ JUDGE James R. Sherck, J. _______________________________ JUDGE
CONCUR.
[1] Juv.R. 40 has since been amended, but the provisions that were considered by the Tenth District and the provisions that apply in this case remain substantially unchanged. The provisions now in effect state, in pertinent part:
 "(E) Decisions in referred matters. Unless specifically required by the order of reference, a magistrate is not required to prepare any report other than the magistrate's decision. Except as to matters on which magistrates are permitted by division (C)(3) of this rule to enter orders without judicial approval, all matters referred to magistrates shall be decided as follows:
 "(1) Magistrate's decision. The magistrate promptly shall conduct all proceedings necessary for decision of referred matters. The magistrate shall then prepare, sign, and file a magistrate's decision of the referred matter with the clerk, who shall serve copies on all parties or their attorneys.
"* * *
"(3) Objections.
 "(a) Time for filing. Within fourteen days of the filing of a magistrate's decision, a party may file written objections to the decision. If any party timely files objections, any other party also may file objections not later than ten days after the first objections are filed. If a party makes a request for findings of fact and conclusions of law under Civ.R. 52, the time for filing objections begins to run when the magistrate files a decision including findings of fact and conclusions of law.
"* * *
"(4) Court's action on magistrate's decision.
 "(a) When effective. The magistrate's decision shall be effective when adopted by the court as noted in the journal record. The court may adopt the magistrate's decision if no written objections are filed unless it determines that there is an error of law or other defect on the face of the magistrate's decision.
 "(b) Disposition of objections. The court shall rule on any objections. The court may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter itself. In delinquency, unruly, or juvenile traffic offender cases, the court may hear additional evidence or hear the matter itself only with the consent of the child. The court may refuse to consider additional evidence preferred upon objections unless the objecting party demonstrates that with reasonable diligence the party could not have produced that evidence for the magistrate's consideration.
 "(c) Permanent and interim orders. The court may adopt a magistrate's decision and enter judgment without waiting for timely objections by the parties, but the filing of timely written objections shall operate as an automatic stay of execution of that judgment until the court disposes of those objections and vacates, modifies, or adheres to the judgment previously entered. The court may make an interim order on the basis of a magistrate's decision without waiting for or ruling on timely objections by the parties where immediate relief is justified. An interim order shall not be subject to the automatic stay caused by the filing of timely objections. An interim order shall not extend more than twenty-eight days from the date of its entry unless, within that time and for good cause shown, the court extends the interim order for an additional twenty-eight days."
[2] At the dispositional hearing, the trial court made statements indicating it did not conduct a full review of the evidence in this case until it received a motion from the prosecutor asking for leave to file objections.
The court said:
 "Juvenile Rule 40 authorizes the Court, upon receipt of an objection to a Magistrate's Report, to give a very careful review of that Magistrate's Report. Because of the volume of magistrate's reports that courts are receiving the law doesn't anticipate that the Judge is going to sit down with each magistrate's report and review the record, review the — In this case, I reviewed two days, almost two days of audio testimony of the trial. It just would not be physically possible for judges to do that. So the law requires that only upon receipt of an objection, which the Court determined to be timely filed in this case, because Mr. Fiegel I believe had an affidavit or a statement in there that he had not received service of the Magistrate's Report"
[3]The record shows the trial court verified that no service was made to the prosecutor of the court's judgment adopting the magistrate's report. The transcript from the dispositional hearing contains the following statement:
 "THE COURT: And when I checked with my staff and asked them to verify when Mr. Fiegel was served with a copy of it, they were not able to do that."