[Cite as *State v. Street*, 2023-Ohio-4405.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

STEPHEN V. STREET,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 JE 0025**

---

Criminal Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case Nos. 21-CR-214, 22-CR-8

**BEFORE:**
David A. D'Apolito, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Vacated.

---

*Atty. Jane M. Hanlin*, Jefferson County Prosecutor, and Atty. *George M. Sarap,* Assistant Prosecuting Attorney, for Plaintiff-Appellee and

*Atty. Felice Harris*, Harris Law Firm, LLC, for Defendant-Appellant.

Dated:  December 5, 2023

**D'APOLITO, P.J.**

**{¶1}** Appellant, Stephen V. Street, appeals the order of the Jefferson County Court of Common Pleas finding him not guilty by reason of insanity ("NGRI") following a bench trial. "A person is 'not guilty by reason of insanity' relative to a charge of an offense only if the person proves, in the manner specified in section 2901.05 of the Revised Code, that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts." R.C. 2901.01(A)(14).

**{¶2}** Appellant advances four assignments of error. First, Appellant contends his waiver of jury trial was invalid, as there is no written waiver in the record and he did not personally waive his right in open court. Appellant further argues that the NGRI verdicts constitute acquittals and are voidable, rather than void, such that jeopardy has attached and he cannot be retried. Next, Appellant argues the trial court committed plain error as it did not conduct a proper R.C. 2945.40(B) civil commitment hearing. Third, Appellant asserts ineffective assistance of counsel because his trial counsel failed to seek a dismissal of the charges at the conclusion of the state's case based on lack of venue and insufficient evidence. Finally, Appellant argues the trial court lacked jurisdiction to entertain the state's March 13, 2023 motion for designation or modification of the record pursuant to App. R. 9(E).

**{¶3}** For the following reasons, the NGRI verdicts are vacated. Further, double jeopardy prohibits Appellant's retrial on the charged counts.

## FACTS AND PROCEDURAL HISTORY

**{¶4}** In 21 CR 214, Appellant was charged with five counts of aggravated arson in violation of R.C. 2909.02(A)(1), felonies of the first degree; one count of aggravated arson in violation of R.C. 2909.02(A)(2), a felony of the second degree; one count of arson in violation of R.C. 2909.03(A)(1), a misdemeanor of the first degree; and one count of criminal damaging or endangering in violation of R.C. 2909.06(A)(1), (B), a misdemeanor of the first degree. All counts relate to a single act of igniting a fire on the front porch of

a neighboring residence, in which five people – two adults and three children – were present. Appellant entered NGRI pleas to each count.

{¶5} In 22 CR 008, Appellant was charged with one count of vandalism in violation of R.C. 2909.05(A), (E), a felony of the fifth degree, and one count of criminal damaging in violation of R.C. 2909.06(A)(1), (B), a misdemeanor of the second degree. Both counts relate to a single act of breaking the front windows of an occupied structure. Appellant entered both NGRI and not guilty pleas to each count. The cases were consolidated by the trial court.

{¶6} Each of the charges required the state to prove beyond a reasonable doubt that Appellant knowingly created a substantial risk of harm or knowingly caused physical harm:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

{¶7} According to an evaluation performed on January 6, 2022 by Daniel Hrinko, Psy.D., a forensic psychologist, Appellant was competent to stand trial pursuant to R.C. 2945.371(H)(3). Dr. Hrinko opined Appellant was "presently mentally ill," however, "[Appellant's] symptoms of severe mental illness, which can be debilitating at times, are relatively well managed through the use of psychotropic medications at this point." (1/6/22 Report, p. 7.) In a report dated July 18, 2022, Jaime C. Adkins, Psy.D., ABPP, another forensic psychologist, reached the same conclusion.

{¶8} With respect to the NGRI pleas, Dr. Hrinko issued a report dated February 2, 2022. Appellant, who was in his early sixties on the day of the evaluation, was

diagnosed with bipolar disorder at the age of 17 and has a history of residential treatment in various psychiatric facilities throughout his life. Several months prior to the charged offenses, Appellant stopped taking his medications (Lithium and Zyprexa) due to a feeling of being overmedicated. The medications were prescribed in 2017.

{¶9} Without medication, Appellant reported hallucinations, for instance, seeing deceased family members in trees. Appellant was hospitalized roughly five days prior to the alleged offenses, however he was inexplicably discharged despite reporting continuing hallucinations. According to Appellant, he is paranoid and overly suspicious when he is not medicated, which causes him to engage in impulsive conduct like smashing windows.

{¶10} Appellant told Dr. Hrinko that he saw suspicious cars in his neighbor's driveway during the week leading up to the charged conduct. Encouraged by a conversation with his deceased sister (both of his sisters are alive), Appellant filled a Mason jar with "2 cycle engine mix," attached a piece of cloth on the top, and ignited it in order to create a "lantern effect" on his neighbor's property.

{¶11} Dr. Hrinko concluded in the February 2, 2022 report that Appellant did not know the wrongfulness of the acts charged in the indictments. In a report dated October 9, 2022, Bob Stinson, Psy.D., reached the same conclusion. As a part of his evaluation, Dr. Stinson reviewed Dr. Hrinko's report as well as a report prepared by Dr. Adkins on June 22, 2022, in which she concurred with Dr. Hrinko.

{¶12} After resuming his medication following his arrest, Appellant's mood stabilized. According to treatment notes from October 6, 2021, Appellant's mental status was unremarkable with his thought process being logical, his perception within normal limits, and no evidence of delusions.

{¶13} On October 27, 2021, while awaiting trial, Appellant was referred from the Jefferson County Jail to Appalachian Behavior Healthcare. Appellant had once again discontinued his medication and was suffering from visual and auditory hallucinations. Appellant believed his deceased wife had come back to life (he was never married) and he saw his sister's dead body lying in his bed. The dosage of Appellant's medication was increased and he returned to the jail roughly two weeks later.

{¶14} On April 5, 2022, counsel for Appellant filed an omnibus motion captioned, "Motion to Consolidate Cases/Wavier of Jury Trial/Motion for Second Opinion of Mental State/Waiver of Time" in 21 CR 214. "Branch Three" of the motion reads, in its entirety, "[t]he Defendant waives his right to a jury and requests the Court proceed to a bench trial in the above-captioned cases." Appellant did not sign the motion.

{¶15} Appellee attached two pages of a transcript from a pre-trial hearing conducted on April 25, 2022 to its appellate brief. The transcript of the hearing is not in the record. At the hearing, the trial court requests an agreed trial date and defense counsel responds, "Your Honor, I think that when we – and, too, [I am] waiving a jury so I think – ." The trial court replies, "I know, but I'd still like to have a trial date." A few moments later, defense counsel states, "[I am] waiving a jury." The trial court responds, "Okay. That's fine. I heard it all. I got it."

{¶16} On April 25, 2022, Appellant executed a written waiver of his right to a speedy trial. A scheduling order, which memorialized the consolidation of the cases and was issued that same day, reads, in relevant part, "Defendant waived his right to be tried by a Jury. A Bench Trial shall be conducted on Tuesday, July 19, 2022 at 9:00 A.M."

{¶17} Roughly six months later, testimony and evidence were offered at Appellant's competency hearing on October 13, 2022. At the hearing, the trial court accepted the testimony of Dr. Stinson and Julie Gomez, the Executive Director of the National Alliance on Mental Health, Greater Wheeling. Dr. Stinson testified that Appellant's diagnoses included "Bipolar I and schizoaffective disorder bipolar (inaudible)." (10/13/22 Hrg. Tr., p. 11.) During his lifetime, Appellant had been institutionalized approximately sixteen times, in eleven different institutions, across five different states. Dr. Stinson opined "[i]f [Appellant] wants to remain stable, [it is] absolutely important he takes his medicine." (Id. at p. 12.) Dr. Stinson further opined Appellant was not aware of the wrongfulness of the charged acts, as he was both manic and psychotic at the time they were committed.

{¶18} In order to facilitate Appellant's admission into the preferred treatment facility, Gomez testified she was working with Appellant's family to secure placement for Appellant at a twenty-four-hour supervised group home/supportive living facility for individuals with mental health conditions, pending the administration of a tuberculosis test

and physical on Appellant. Gomez explained that space was limited and that no bed would be available on the date of the commitment hearing without advanced preparation.

{¶19} Following the hearing, the trial court concluded Appellant was competent to stand trial, which is memorialized in a judgment entry issued the same day. Appellant does not challenge the trial court's competency determination in this appeal.

{¶20} At the bench trial/commitment hearing conducted on October 26, 2022, the trial court inquired, "Was there a waiver of his right to trial by jury filed?" Defense counsel responded, "Yes, there was. We did do a waiver, your Honor." The state confirmed, "That's been done, yeah." (10/26/22 Trial Tr., p. 45-46.) Although the omnibus motion contains a waiver of jury trial, it does not comport with the requirements of R.C. 2945.05. Further, Appellant did not waive his right to a jury trial in open court.

{¶21} The trial court ultimately concluded Appellant committed the acts in question based on factual stipulations that were not made a part of the record until after the notice of appeal was filed. According to an affidavit of the deputy clerk, the stipulations were in the file but were not time-stamped or docketed.

{¶22} The stipulations read, in their entirety:

The events herein all occurred in Jefferson County, Ohio.

The specifics of the Indictment as to times, locations, defendant and names of victims are incorporated herein.

On or about October 19, 2021, Stephen Street did knowingly start a fire at an occupied structure, to wit: the residence of Jason Elliot[t] located at the address indicated in the Indictment. The address was 1135 County Road 41, Richmond, Ohio.

The fire was started and ignited on the porch of the occupied structure.

At the above time and place, the persons in and occupying the structure were as stated in the Indictment. The persons were Jason Elliot[t], Sarah Elliot[t], C.E., a minor, age 13 (D.O.B. 4-25-2008)[,] S.E., a minor, age 11 (D.O.B. 4-15-2010)[,] and J.E., a minor, age 9 (D.O.B. 5-30-12).

The fire caused harm to the structure.

Stephen Street did knowingly by means of fire cause or create a substantial risk of, [sic] physical harm to the property of Jason C. Elliot[t].

On or about October 19, 2021, Stephen Street did knowingly cause serious physical harm to an occupied structure or any of its contents, to wit: property located at 8008 County Road 56, Toronto, Ohio. The damage was in excess of one thousand dollars ($1,000.00). The defendant broke windows and caused other damage to the structure. The structure was occupied by Michael Bernhart.

(2/14/23 Stipulations, p. 1.).

{¶23} At the commencement of the October 26, 2022 hearings, the following colloquy occurred:

PROSECUTOR: Your Honor, may I approach?

THE COURT: Yes.

PROSECUTOR: Stipulations.

DEFENSE COUNSEL: Absolutely.

PROSECUTOR: [Here are] our stipulations, your Honor --

THE COURT: All right.

PROSECUTOR: -- signed by both parties (providing). * * * Okay. Your Honor, you have been given the stipulations. [That is] most of, you know, what [we are] here arguing about. Much of it has been stipulated to.

My opening [statement], generally, I -- you know, if [it is] a jury, [I will] read the Indictments at the same time. We stipulate --

DEFENSE COUNSEL: We would stipulate to the Indictments.

Case No. 22 JE 0025

PROSECUTOR: -- to the Indictments on case 21-214 and 22-8, and I incorporate them into my opening statement.

THE COURT: All right.

PROSECUTOR: I [do not] want to get directed out.

As for evidence, Judge, we also have available the statement of [Appellant]. I have that on a memory stick, if the Court wants to review that, and we have some body cam[era]s.

(10/26/21 Hrg. Tr., p. 33-34.) Appellant's statement and the body camera footage are not in the record.

**{¶24}** In turn, defense counsel stipulated to the psychological reports, including the competency reports and the results of the forensic examinations. Defense counsel acknowledged "three doctors have found that [Appellant] was not able to appreciate the wrongfulness of his conduct at the time the offenses were allegedly committed. I think we have stipulated to all the factual issues." (*Id.*, p. 35.) As a consequence, defense counsel argued "based on everything [the trial court has] in front of [it] right now, [the trial court] really [has] no other recourse than to find that [Appellant] was not able to appreciate the wrongfulness of his actions at the time of the offenses." (*Id.*, p. 37.)

**{¶25}** With respect to the stipulations, the prosecutor observed:

Just so the Court is clear, your Honor, the stipulations cover everything in this case, okay, except one thing. They stipulated – just so you know where [we are] going – that [Appellant] did knowingly, by means of fire, create a substantial risk of physical harm to the property of Jason Elliott. Okay. No question he started the fire and everything, but they [did not] stipulate that him doing that created a substantial risk of serious physical harm to the people inside. [That is] what they [will not] stipulate to [sic].

So if they stipulate to that, then [it is] over. I mean, we just end the thing right now.

Case No. 22 JE 0025

(*Id.*, p. 38-39.)

{¶26} The trial court responded, "[w]ell, [it is] over because he was insane at the time. * * * [That is] what makes it over." Defense counsel agreed. (*Id.*, p. 39.)

{¶27} Although the trial court expressed its opinion that no additional testimony was necessary based on the stipulations, the state offered the testimony of Jefferson County Sheriff's Deputy Tyler Yoho. Defense counsel's response to Deputy Yoho's proposed testimony was "[I am] not disputing anything." (*Id.*, p. 39.)

{¶28} Deputy Yoho was an investigating officer assigned to the Elliott case, as well as a professional-level firefighter with an instructor's degree. When asked by the prosecutor if the fire on the porch created a substantial risk of "catching the house on fire," he responded, "I believe it had the potential, yes." (*Id.*, p. 42.) The prosecutor asked, "[t]hen that being said, do you have an opinion as to whether it created a substantial risk of serious physical harm to the people in the house," Deputy Yoho responded, "I believe it did for the residence. The people inside would also be at risk as well." (*Id.*)

{¶29} Next, the trial court viewed a video recording that was not specifically identified in the record. However, earlier in the hearing, the prosecutor expressed his intent to play a video recording of the porch fire, which the trial court deemed unnecessary due to the stipulations. Further, the trial court admitted photographs, which Deputy Yoho authenticated, accompanied by a stipulated laboratory report.

{¶30} The trial court delivered the following verdicts:

So based upon the stipulations, based upon the video and the testimony of the officer, I do find beyond a reasonable doubt that [Appellant] committed all of the acts set forth in the Indictments and that there was a substantial risk of serious physical harm to people, but I also find that he was insane at the time and that he did not understand or appreciate the wrongfulness of his conduct.

So [he is] Not Guilty by Reason of Insanity, and now we have to have the hearing about what [we are] going to do about it.

(*Id.*, p. 46.)

**{¶31}** Following the trial court's NGRI verdicts, the trial court accepted additional testimony from Gomez, in which she provided an update regarding Appellant's eligibility for admission to the preferred treatment facility. During the commitment hearing, Gomez reported that Appellant had fulfilled the admission requirements, and she had secured financing for the first three months of his commitment through the County until Appellant's federal benefits became available. Appellant was transferred to the facility directly from the hearing.

**{¶32}** The Order Finding Defendant Not Guilty by Reason of Insanity reads, in relevant part:

> The parties stipulated to the findings and conclusions listed in the Competency Evaluations completed by Jaime C. Adkins, Psy.D., from the Forensic Diagnostic Center of District Nine, Inc., and Bob Stinson, Psy.D., from Stinson & Associates, Inc., all of which reached the same conclusion.

> The parties stipulated to the contents of the reports and their submission into evidence.

> Based on the stipulations of the parties to the facts in the Indictment, the reports submitted into evidence and the testimony, the Court finds that the Defendant is Not Guilty based solely on a severe mental disease and he did not know the wrongfulness of the acts charged.

> The Court enters Verdict and Judgment in this case and finds Defendant Not Guilty by Reason of Insanity.

> Defendant is ordered to undergo treatment and comply with any and all requirements for treatment by Mayle Homes, Inc. and shall be committed to Mayle Homes, Inc. for a period of eleven (11) years, subject to review, while undergoing treatment, rehabilitation, and education.

(10/27/2022 Order, p. 1.) According to a statement by the trial court at the hearing, the imposition of the eleven-year commitment was predicated upon the maximum prison sentence Appellant faced had he been convicted on all counts.[1]

**{¶33}** This timely appeal followed.

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT VIOLATED [APPELLANT'S] CONSTITUTIONAL RIGHT TO TRIAL BY JURY AND PLAINLY ERRED IN PROCEEDING WITH A BENCH TRIAL WHERE [APPELLANT] DID NOT PERSONALLY WAIVE TRIAL BY JURY IN OPEN COURT OR OTHERWISE SIGN A WRITTEN JURY WAIVER, FILED IN THE CAUSE, AND MADE PART OF THE RECORD.**

**{¶34}** The Sixth Amendment to the United States Constitution and Section 10, Article I, of the Ohio Constitution provide criminal defendants with the right to a jury trial. In Ohio, five conditions must be met in order for a waiver of a defendant's constitutional right to a jury trial to be effective:

> The waiver must be (1) in writing, (2) signed by the defendant, (3) filed, (4) made part of the record, and (5) made in open court. See *State v. Lomax*, 114 Ohio St.3d 350, 2007-Ohio-4277, 872 N.E.2d 279, ¶ 9.

*State v. VanFossen*, 2022-Ohio-4022, 199 N.E.3d 716, ¶ 15 (7th Dist.).

**{¶35}** The requirements for waiver of a jury trial in Ohio are addressed by both criminal rule and statute. "In serious offense cases the defendant before commencement of the trial may knowingly, intelligently and voluntarily waive in writing his right to trial by

---

[1] A person found not guilty by reason of insanity and committed pursuant to section 2945.40 of the Revised Code shall remain subject to the jurisdiction of the trial court pursuant to that commitment until the final termination of the commitment as described in R.C. 2945.401(J)(1). If the jurisdiction is terminated because of the final termination of the commitment resulting from the expiration of the maximum prison term or term of imprisonment described in division R.C. 2945.401(J)(1)(b), the court or prosecutor may file an affidavit for the civil commitment of the defendant or person pursuant to Chapter 5122 or 5123 of the Revised Code. R.C. 2945.401(A).

jury." Crim.R. 23(A). More specifically, R.C. 2945.05, captioned "Defendant may waive jury trial," reads in its entirety:

> In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof. It shall be entitled in the court and cause, and in substance as follows: "I _____, defendant in the above cause, hereby voluntarily waive and relinquish my right to a trial by jury, and elect to be tried by a Judge of the Court in which the said cause may be pending. I fully understand that under the laws of this state, I have a constitutional right to a trial by jury."

**{¶36}** The waiver of trial by jury must be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel. However, the trial court need not engage in a lengthy colloquy with the defendant. For instance, in *State v. Sanders*, 188 Ohio App.3d 452, 2010-Ohio-3433, 935 N.E.2d 905 (10th Dist.), the trial court stated to the defendant in open court, "it is my understanding that you have waived your right to a jury trial and would like to have the court decide this case," and the defendant replied, "yes." The Tenth District concluded that the foregoing exchange satisfied the minimum requirements of R.C. 2945.05 and *Lomax. Id.* at ¶ 13. The waiver may be withdrawn by the defendant at any time before the commencement of the trial.

**{¶37}** On April 5, 2022, Appellant filed an omnibus motion captioned, "Motion to Consolidate Cases/Wavier of Jury Trial/Motion for Second Opinion of Mental State/Waiver of Time" in 21 CR 214. "Branch Three" of the motion reads, in its entirety, "[t]he Defendant waives his right to a jury and requests the Court proceed to a bench trial in the above-captioned cases." Appellant did not sign the motion.

**{¶38}** Appellee attached two pages of a transcript from a pre-trial hearing conducted on April 25, 2022 to its appellate brief. The transcript of the hearing is not in the record. At the hearing, the trial court requests an agreed trial date and defense counsel responds, "Your Honor, I think that when we – and, too, [I am] waiving a jury so I think – ." The trial court replies, "I know, but I'd still like to have a trial date." A few

moments later, defense counsel states, "[I am] waiving a jury." The trial court responds, "Okay. That's fine. I heard it all. I got it."

**{¶39}** On April 25, 2022, Appellant executed a written waiver of his right to a speedy trial. A scheduling order, which memorialized the consolidation of the cases and was issued that same day, reads, in relevant part, "Defendant waived his right to be tried by a Jury. A Bench Trial shall be conducted on Tuesday, July 19, 2022 at 9:00 A.M."

**{¶40}** Roughly six months later, testimony and evidence was offered at the competency hearing held on October 13, 2022, and the trial court concluded Appellant was competent to stand trial that same day. At the bench trial on October 26, 2022, the trial court inquired, "Was there a waiver of his right to trial by jury filed?" Defense counsel responded, "Yes, there was. We did do a waiver, your Honor." The state confirmed, "That's been done, yeah." (10/26/22 Trial Tr., p. 45-46.)

**{¶41}** Although the omnibus motion contains a waiver of jury trial, it does not comport with the requirements of R.C. 2945.05. Most significantly, the motion is not signed by Appellant. Even if Appellant had signed the motion, his competency was not determined on April 5, 2022 when the motion was filed. Further, Appellant did not waive his right to a jury trial in open court.

**{¶42}** "In a criminal case where the defendant elects to waive the right to trial by jury, R.C. 2945.05 mandates that the waiver must be in writing, signed by the defendant, filed in the criminal action and made part of the record thereof." *State v. Pless*, 74 Ohio St.3d 333, 658 N.E.2d 766 (1996), paragraph one of the syllabus. "In the absence of strict compliance with R.C. 2945.05, a trial court lacks jurisdiction to try the defendant without a jury." *Id.* However, Appellant must challenge the defective waiver on direct appeal. *Id.,* paragraph two of the syllabus.

**{¶43}** The Ohio Supreme Court has consistently required strict compliance with the statutory requirements of R.C. 2945.05. In *State v. Tate*, 59 Ohio St.2d 50, 391 N.E.2d 738 (1979), the Court made clear that "it must appear of record" that a defendant waived his right to a jury trial "in writing in the manner provided by R.C. 2945.05." *Id.* at syllabus.

**{¶44}** The Ohio Supreme Court again emphasized the need for strict compliance in *State ex rel. Jackson v. Dallman*, 70 Ohio St.3d 261, 638 N.E.2d 563 (1994), opining "[t]here must be strict compliance with R.C. 2945.05 for there to be a waiver of a right to

a jury trial; where the record does not reflect strict compliance, the trial court is without jurisdiction to try the defendant without a jury." *Id.* (granting writ of habeas corpus where uncertified written waiver was not filed and made a part of the record).

**{¶45}** The following year, however, the Ohio Supreme Court appeared to move to a substantial compliance test, reversing the grant of a writ of habeas corpus where an executed written jury waiver was placed in the court file, but was not filed stamped and formally made a part of the record. In *State ex rel. Larkins v. Baker*, 73 Ohio St.3d 658, 653 N.E.2d 701 (1995), the petitioner was convicted at a bench trial of aggravated murder, aggravated robbery, and attempted murder. The *Larkins* Court reasoned that the "failure to strictly comply with R.C. 2945.05 by not filing the executed written waiver was not the result of Larkins's failure to properly waive his right to be tried by a jury and elect to be tried by the court. The evidence is uncontroverted that he did so. Instead, the failure to comply with R.C. 2945.05 was the result of an error on the part of the trial court to formally file the executed written waiver." *Id.* at 661. The Ohio Supreme Court opined "the failure to strictly comply with R.C. 2945.05 *under the circumstances here* is neither a jurisdictional defect nor an error for which no adequate remedy at law exists. Larkin could have raised the error in his direct appeal." (emphasis added) *Id.* at 660.

**{¶46}** However, the Ohio Supreme Court quickly returned to the strict compliance standard in *Pless, supra.* The *Pless* Court limited *Larkins*, stating "[a]lthough Larkins seemingly created an exception to the rule that failure to strictly comply with R.C. 2945.05 deprives a court of jurisdiction to try a criminal defendant without a jury, *the sole proposition for which Larkins stands is that a violation of R.C. 2945.05 is not the proper subject for habeas corpus relief.*" *Id.* at 339 (emphasis in original). The second paragraph of the syllabus, which requires an invalid waiver claim to be raised on direct appeal, includes a parenthetical reference explaining the requirement "harmonize[s]" *Pless* with *Larkins.* That same year, on the authority of *Pless*, the Ohio Supreme Court reversed a conviction on direct appeal due to a failure to time-stamp the jury trial waiver form finding that the trial court did not have jurisdiction due to the invalid waiver. *State v. Haught*, 670 N.E.2d 232, 1996-Ohio-353 (1996).

**{¶47}** Appellant correctly argues, and the state concedes, the waiver of jury trial in this case was invalid. Based on the second paragraph of the syllabus in *Pless*,

Appellant further argues that the NGRI verdicts are voidable, not void, and therefore, double jeopardy prohibits retrial on all of the charges in the consolidated criminal cases.

**{¶48}** The void-sentence doctrine starts from the premise there are two types of sentencing errors: Errors that render the sentence void, and errors that render the sentence voidable. *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, ¶ 20. A defendant's ability to challenge an entry at any time is the very essence of an entry being void, not voidable. *Id.* at ¶ 18. Where an entry is voidable, res judicata applies. See *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, ¶ 30.

**{¶49}** In *Harper,* the Ohio Supreme Court held "[a] sentence is void when a sentencing court lacks jurisdiction over the subject matter of the case or personal jurisdiction over the accused." *Harper* at ¶ 42. In so holding, the Ohio Supreme Court provided the following explanation of subject matter jurisdiction:

> Subject-matter jurisdiction refers to the constitutional or statutory power of a court to adjudicate a particular class or type of case. *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 11-12, 34. "It is a 'condition precedent to the court's ability to hear the case. If a court acts without jurisdiction, then any proclamation by that court is void.' " *Id.* at ¶ 11, quoting *State ex rel. Tubbs Jones v. Suster*, 84 Ohio St.3d 70, 75, 701 N.E.2d 1002 (1998). "A court's subject-matter jurisdiction is determined without regard to the rights of the individual parties involved in a particular case." *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 19. Rather, the focus is on whether the forum itself is competent to hear the controversy. See 18A Wright, Miller & Cooper, *Federal Practice and Procedure*, Section 4428, at 6 (3d Ed.2017) ("Jurisdictional analysis should be confined to the rules that actually allocate judicial authority among different courts").
>
> Article IV, Section 4(A) of the Ohio Constitution provides that "[t]here shall be a court of common pleas and such divisions thereof as may be established by law serving each county of the state," and Article IV, Section

4(B) establishes that "[t]he courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters * * * as may be provided by law." As we explained in *State v. Aalim*, "Article IV, Section 4(B) of the Ohio Constitution grants exclusive authority to the General Assembly to allocate certain subject matters to the exclusive original jurisdiction of specified divisions of the courts of common pleas." 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶ 2.

The General Assembly exercised that power in enacting R.C. 2931.03, which provides that "[t]he court of common pleas has original jurisdiction of all crimes and offenses, except in cases of minor offenses the exclusive jurisdiction of which is vested in courts inferior to the court of common pleas." Accordingly, "[j]urisdiction over all crimes and offenses is vested in the court of common pleas, general division, unless such jurisdiction specifically and exclusively is vested in other divisions of the court of common pleas or in the lower courts." *State ex rel. McMinn v. Whitfield*, 27 Ohio St.3d 4, 5, 500 N.E.2d 875 (1986). We have therefore recognized that pursuant to R.C. 2931.03, "a common pleas court has subject-matter jurisdiction over felony cases." *Smith v. Sheldon*, 157 Ohio St.3d 1, 2019-Ohio-1677, 131 N.E.3d 1, ¶ 8.

" 'Once a tribunal has jurisdiction over both the subject matter of an action and the parties to it, "* * * the right to hear and determine is perfect; and the decision of every question thereafter arising is but the exercise of the jurisdiction thus conferred * * *." ' " (Ellipses added in *Pizza*.) *Pratts*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, at ¶ 12, quoting *State ex rel. Pizza v. Rayford*, 62 Ohio St.3d 382, 384, 582 N.E.2d 992 (1992), quoting *Sheldon's Lessee v. Newton*, 3 Ohio St. 494, 499 (1854). And when a specific action is within a court's subject-matter jurisdiction, any error in the exercise of that jurisdiction renders the court's judgment voidable, not void. *Id.* at ¶ 12, 21. Generally, a voidable judgment may be set aside only

if successfully challenged on direct appeal. See *State v. Payne*, 114 Ohio
St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 28.

*Id.* at ¶ 23-26.

**{¶50}** In *Kuchta, supra,* the Ohio Supreme Court recognized three types of jurisdiction, that is, jurisdiction over the subject matter, jurisdiction over the person, and jurisdiction over a particular case. *Id.* at ¶ 18. With respect to the third category, the Ohio Supreme Court observed:

A court's jurisdiction over a particular case refers to the court's authority to proceed or rule on a case that is within the court's subject-matter jurisdiction. *Pratts* at ¶ 12. This latter jurisdictional category involves consideration of the rights of the parties. If a court possesses subject-matter jurisdiction, any error in the invocation or exercise of jurisdiction over a particular case causes a judgment to be voidable rather than void. *Id.* at ¶ 12.

*Id.*

**{¶51}** The conclusion the NGRI verdicts are voidable, rather than void, is consistent with the Ohio Supreme Court's holding in *Pless* that an invalid jury trial waiver may only be raised on direct appeal. Accordingly, we find the trial court failed to strictly comply with R.C. 2945.05, but the invalid waiver did not affect the trial court's subject matter jurisdiction. The jury waiver relates to the rights of a party, not the trial court's power to hear and resolve felony cases. As a consequence, the NGRI verdicts are voidable, not void.

**{¶52}** Had the trial court entered guilty verdicts at the bench trial, the resolution of this appeal would be clear. The matter would be remanded for a jury trial. Had the trial court entered not guilty verdicts at the bench trial, no appeal would have been taken. However, the trial court entered NGRI verdicts, and as a consequence, we must determine whether NGRI verdicts, delivered by a court of competent jurisdiction and vacated due to an improper jury waiver, forecloses the state from retrying Appellant for the charges stated in the indictments.

Case No. 22 JE 0025

{¶53} The Fifth Amendment to the United States Constitution guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." The Ohio Constitution contains a similarly-worded guarantee: "No person shall be twice put in jeopardy for the same offense." Ohio Constitution, Article I, Section 10. In assessing whether a criminal defendant can be retried, the guiding principle is "[t]he Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks v. United States*, 437 U.S. 1, 11, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

{¶54} Further, "[t]he constitutional protection against double jeopardy unequivocally prohibits a second trial following an acquittal." *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 139, quoting *Arizona v. Washington*, 434 U.S. 497, 503, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). In *Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978), the Ohio Supreme Court observed:

> That " '(a) verdict of acquittal . . . (may) not be reviewed . . . without putting (the defendant) twice in jeopardy, and thereby violating the Constitution,' " has recently been described as "the most fundamental rule in the history of double jeopardy jurisprudence." *United States v. Martin Linen Supply Co.*, (*Supra* 430 U.S. at 571, 97 S.Ct. 1349), Quoting *United States v. Ball*, 163 U.S. 662, 671, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). The fundamental nature of this rule is manifested by its explicit extension to situations where an acquittal is "based upon an egregiously erroneous foundation." *Fong Foo v. United States*, (*Supra*, 369 U.S. at 143, 82 S.Ct. 671); See *Green v. United States*, (*Supra* 355 U.S. at 188, 78 S.Ct. 221). In *Fong Foo* the Court of Appeals held that the District Court had erred in various rulings and lacked power to direct a verdict of acquittal before the Government rested its case. We accepted the Court of Appeals' holding that the District Court had erred, but nevertheless found that the Double Jeopardy Clause was "violated when the Court of Appeals set aside the judgment of acquittal and directed that petitioners be tried again for the same offense." *Ibid.* Thus when a defendant has been acquitted at trial he may not be retried on the same

offense, even if the legal rulings underlying the acquittal were erroneous. (*Id.* at 2178-79.)

*Id.* at 64.

{¶55}  In *City v. Giordano*, 155 Ohio St.3d 470, 2018-Ohio-5024, 122 N.E.3d 151, the Ohio Supreme Court discussed the expanding application of double jeopardy:

Historically, the common-law protection against double jeopardy applied only when a jury had rendered a verdict. *See Smith v. Massachusetts*, 543 U.S. 462, 466, 125 S.Ct. 1129, 160 L.Ed.2d 914 (2005). The protection has been extended, however, well beyond its common-law origins. *See id.* at 467, 125 S.Ct. 1129; *Crist v. Bretz*, 437 U.S. 28, 34-35, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). The double-jeopardy principle now covers not only acquittals by a jury but also acquittals by a judge that are akin to a jury verdict.  *See Smith v. Massachusetts* at 467, 125 S.Ct. 1129. Thus, a ruling by a trial judge that the evidence presented by the state is "insufficient to establish criminal liability for an offense" amounts to an acquittal and bars retrial. *Evans v. Michigan*, 568 U.S. 313, 318-319, 133 S.Ct. 1069, 185 L.Ed.2d 124 (2013).

The protection has been extended further to prevent retrial after an appellate court determines that the evidence presented at trial was insufficient to convict. The "ordinar[y]" rule is that the double-jeopardy guarantee "does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction." *Lockhart v. Nelson*, 488 U.S. 33, 38, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988). But when an appellate court reverses for insufficiency of the evidence, the Double Jeopardy Clause bars retrial. *Id.* at 39, 109 S.Ct. 285; *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, ¶ 18. The rationale is that "[b]ecause the Double Jeopardy Clause affords the defendant who obtains a judgment of acquittal at the trial level absolute

immunity from further prosecution for the same offense, it ought to do the same for the defendant who obtains an appellate determination that the trial court *should* have entered a judgment of acquittal." (Emphasis sic.) *Lockhart* at 39, 109 S.Ct. 285.

In contrast, when an appellate court's reversal is based on "trial error" – for example, an erroneous admission of evidence – the Double Jeopardy Clause does not bar retrial. *Lockhart* at 40, 109 S.Ct. 285; *Brewer* at ¶ 18. This is because, unlike a finding that the government failed to affirmatively prove its case, a reversal based on trial error simply means that the defendant "has been convicted through a judicial process which is defective in some fundamental respect." *Brewer* at ¶ 18, quoting *Lockhart* at 40, 109 S.Ct. 285.

*Id.* at ¶ 9-11.

**{¶56}** Relevant here, the United States Supreme Court has defined an acquittal to encompass any ruling that the prosecution's proof is insufficient to establish criminal liability for an offense. *See United States v. Scott*, 437 U.S. 82, n. 11, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *Burks v. United States*, 437 U.S. 1, 10, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977). Therefore, an "acquittal" includes "a ruling by the court that the evidence is insufficient to convict," a "factual finding [that] necessarily establish[es] the criminal defendant's lack of criminal culpability," and any other "rulin[g] which relate[s] to the ultimate question of guilt or innocence." *Scott*, 437 U.S. at 91, 98, and n. 11, 98 S.Ct. 2187 (internal quotation marks omitted).

**{¶57}** "[T]he insanity defense goes to the very root of our criminal justice system and is founded on the broader principle that an insane person may not be held criminally responsible for his conduct." *State v. Curry*, 45 Ohio St.3d 109, 112, 543 N.E.2d 1228 (1989). "[O]ne, who does not know that his action is wrong * * * is not a proper subject for punishment." *Id.*, citing *State v. Staten*, 18 Ohio St.2d 13, 20, 247 N.E.2d 293 (1969), superseded by statute.

**{¶58}** While a NGRI verdict is an acknowledgment that an insanity acquittee cannot be held criminally liable for his actions, it is not, typically, followed by release, but instead by civil commitment to a mental health facility for treatment. Unlike criminal defendants who are confined for punishment, insanity aquittees are confined for treatment and safety.

**{¶59}** "Insanity is an affirmative defense that must be proven by a preponderance of the evidence." *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 35; R.C. 2901.05(A) ("The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense other than self-defense, defense of another, or defense of the accused's residence * * * is upon the accused."). "The accused must persuade the trier of fact that 'at the time of the commission of the offense, the [accused] did not know, as a result of a severe mental disease or defect, the wrongfulness of the [accused's] acts.' " *Hancock* at ¶ 35, quoting R.C. 2901.01(A)(14). "The weight to be given the evidence and the credibility of the witnesses concerning the establishment of the defense of insanity in a criminal proceeding are primarily for the trier of facts." *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982).

**{¶60}** With the foregoing case law in mind, we must determine whether an NGRI verdict constitutes a ruling by the trial court that the evidence is insufficient to convict, a factual finding that necessarily establishes the criminal defendant's lack of criminal culpability, or any other ruling which relates to the ultimate question of guilt or innocence. *See Scott*, 437 U.S. at 91, 98, and n. 11, or whether Appellant has simply been convicted through a judicial process which is defective in some fundamental respect. *See Brewer* at ¶ 18, quoting *Lockhart* at 40, 109 S.Ct. 285.

**{¶61}** The mens rea element of each of the charged crimes here was "knowingly." The Supreme Court of Ohio explained the interplay of mens rea and the insanity defense as follows:

> "It is true, of course, that the existence of the required state of mind is to be determined subjectively in the sense that the issue must be resolved according to the particular circumstance of a given case. However, this fact may not be allowed to obscure the critical difference between the legal

concepts of mens rea and insanity. * * * The former refers to the existence in fact of a guilty mind; insanity, on the other hand, connotes a presumption that a particular individual lacks the capacity to possess such a state of mind. * * * The line between the sane and the insane for purposes of criminal adjudication is not drawn because for one group the actual existence of the necessary mental state (or lack thereof) can be determined with any greater certainty, but rather because those whom the law declares insane are demonstrably so aberrational in their psychiatric characteristics that we choose to make the assumption that they are incapable of possessing the specified state of mind."

*State v. Wilcox*, 70 Ohio St.2d 182, 191-192, 436 N.E.2d at 528-529 (quoting *Bethea v. United States*, 365 A.2d 64, 86-88 (D.C.App.1976)).

**{¶62}** No state or federal court has addressed the precise issue raised in the first assignment of error, that is, the application of double jeopardy to NGRI verdicts resulting from a bench trial conducted pursuant to an invalid jury waiver.[2] However, *McElrath v. State*, 315 Ga. 126, 880 S.E.2d 518, cert. granted, 143 S.Ct. 2688, which is currently pending before the United States Supreme Court, provides some insight.

**{¶63}** A jury found McElrath "guilty but mentally ill" as to felony murder (and aggravated assault), but "not guilty by reason of insanity" as to malice murder, in the brutal stabbing death of his mother. On appeal, the Georgia Supreme Court concluded the verdicts were repugnant, which rendered both verdicts void. As a consequence, the Georgia Supreme Court remanded both charges for retrial.

**{¶64}** Following remand, McElrath argued double jeopardy prohibited retrial on the malice murder charge. On appeal, the Georgia Supreme Court concluded the repugnant verdicts failed to result in an event that terminated jeopardy, and thus, general principles of double jeopardy did not bar defendant's retrial on the malice murder charge.

---

[2] In *State v. Janney*, 55 Ohio App.2d 257, 380 N.E.2d 753 (1977), the Tenth District opined a finding of not guilty by reason of insanity is not a final judgment or order appealable to a Court of Appeals. *Id.* at syllabus. However, the opinion is predicated upon a prior version of R.C. 2945.39, which previously governed NGRI verdicts. The *Janney* Court found that the statutory language specifically limited an insane acquittee's remedy to a writ of habeas corpus.

Case No. 22 JE 0025

**{¶65}** In so holding, the Georgia Supreme Court reasoned:

The Fifth Amendment to the United States Constitution guarantees criminal defendants protection against double jeopardy. See U. S. Const. Amend. V. Likewise, the Georgia Constitution provides that "[n]o person shall be put in jeopardy of life or liberty more than once for the same offense except when a new trial has been granted after conviction or in case of mistrial." Ga. Const. of 1983, Art. I, Sec. I, Par. XVIII.[3] The doctrine of double jeopardy encompasses both "procedural" and "substantive" aspects, the former barring multiple prosecutions for crimes arising from the same conduct, and the latter barring multiple punishments for such crimes. See *Williams v. State*, 307 Ga. 778, 779 (1), 838 S.E.2d 235 (2020). As the United States Supreme Court and this Court have previously noted, a fundamental principle of procedural double jeopardy is that a "verdict of acquittal is an absolute bar to a subsequent prosecution for the same offense." *Williams v. State*, 288 Ga. 7, 8 (2), 700 S.E.2d 564 (2010) (citing *Green v. United States*, 355 U. S. 184, 188, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957)). See also *Bullington v. Missouri*, 451 U. S. 430, 445 (IV), 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981); *Burks v. United States*, 437 U. S. 1, 16 (II), 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) 16 (II), 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) (noting that "we necessarily afford absolute finality to a jury's verdict of acquittal" (emphasis omitted)).

The bar against double jeopardy also encompasses the doctrine of collateral estoppel, which precludes the re-litigation of an ultimate fact issue that was determined by a valid and final judgment. See *Giddens v. State*, 299 Ga. 109, 112-113 (2) (a), 786 S.E.2d 659 (2016). As the United States Supreme Court has explained,

---

[3] Article I, Section 10 of the Ohio Constitution reads, in relevant part, "[n]o person shall be twice put in jeopardy for the same offense."

Case No. 22 JE 0025

"[c]ollateral estoppel" is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined *by a valid and final judgment*, that issue cannot again be litigated between the same parties in any future lawsuit.

(Emphasis supplied.) *Ashe v. Swenson*, 397 U. S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). See also *Roesser v. State*, 294 Ga. 295, 296, 751 S.E.2d 297 (2013) ("When there is 'a critical issue of ultimate fact in all of the charges against [the defendant], a jury verdict that necessarily decided that issue in his favor protects him from prosecution for any charge for which that is an essential element.' ") (quoting *Yeager v. United States*, 557 U. S. 110, 123 (II), 129 S.Ct. 2360, 174 L.Ed.2d 78 (2009)).

Based on these principles, McElrath argues that the jury's verdict of not guilty by reason of insanity as to the malice murder charge bars retrial as to that charge, as well as the other charges in the indictment. *Under the general principles of double jeopardy and viewed in isolation, the jury's purported verdict of not guilty by reason of insanity would appear to be an acquittal that precludes retrial, as not guilty verdicts are generally inviolate.* See *Yeager*, 557 U. S. at 122–123 (II), 129 S.Ct. 2360 ("Even if the verdict is based upon an egregiously erroneous foundation, its finality is unassailable." (citation and punctuation omitted)); *Richardson v. United States*, 468 U. S. 317, 325, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984) ("[T]he protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy."). Viewed in context alongside the verdict of guilty but mentally ill, however, the purported acquittal loses considerable steam. Because the verdicts were repugnant, both are rendered valueless. There is no way to decipher what factual finding or determination they represent, and McElrath cannot be said with any confidence to have been found not guilty based on insanity any more than it can be said that the jury made a finding of sanity

and guilt with regard to the same conduct. See *McElrath*, 308 Ga. at 111 (2) (c), 839 S.E.2d 573 ("Where a jury renders repugnant verdicts, both verdicts must be vacated and a new trial ordered for the same reasons applicable to mutually exclusive verdicts.") (citing *Dumas v. State*, 266 Ga. 797, 471 S.E.2d 508 (1996))). Thus, the repugnant verdicts failed to result in an event that terminated jeopardy, akin to a situation in which a mistrial is declared after a jury is unable to reach a verdict. Cf. *Richardson*, 468 U. S. at 325-326, 104 S.Ct. 3081 (holding that a retrial following a hung jury generally does not violate the Double Jeopardy Clause because the jury's failure to reach a verdict does not terminate the original jeopardy). Accordingly, the general principles of double jeopardy do not bar McElrath's retrial on the malice murder charge.

But that does not end our analysis. McElrath has further argued that the doctrine of collateral estoppel, which is encompassed by the prohibition against double jeopardy, would also bar retrial. We disagree.

As detailed in Division 1 above, the verdicts returned by the jury were repugnant, and "any judgment and sentence entered on repugnant verdicts are void." See *State v. Owens*, 312 Ga. 212, 216 (1) (a), 862 S.E.2d 125 (2021) ("In considering whether verdicts were repugnant and thus void, we have held that no *valid judgment* may be entered on a void verdict." (emphasis supplied; citations and punctuation omitted)). Simply stated, a repugnant verdict of the sort rendered in McElrath's first trial is no verdict at all because it did not "represent[ ] a resolution, correct or not, of some or all of the factual elements of the offense charged." *United States v. Martin Linen Supply Co.*, 430 U. S. 564, 571 (II), 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977). And collateral estoppel only applies once there has been a valid and final judgment. *See Ashe*, 397 U. S. at 443, 90 S.Ct. 1189 (noting that a "valid and final judgment" is required before collateral estoppel bars retrial).

(Emphasis added) *Id.* at 128-131.

{¶66} Although not directly on point, *McElrath* informs our decision on two key issues. First, the Georgia Supreme Court recognizes that a valid and final judgment of a trial court finding a defendant not guilty by reason of insanity is an acquittal, indistinguishable from a standard acquittal despite the fact that an insanity acquittee is subject to commitment for treatment and safety. *McElrath* further stands for the proposition that neither double jeopardy nor collateral estoppel applies to a void judgment. Accordingly, *McElrath* supports Appellant's argument that the Order on the NGRI verdicts are valid and final judgments, which constitute acquittals prohibiting a new trial on the charges.

{¶67} The Supreme Court of Colorado reached a similar conclusion in *People v. Serravo*, 823 P.2d 128, 141 (Colo.1992). In that case, the Colorado Supreme Court reversed Serravo's NGRI verdict based on an improper jury instruction, which advocated a subjective rather than objective definition of "right and wrong." Based on a United States Supreme Court case holding that a reversal on appeal for insufficiency of the evidence prohibits retrial, *Burks, supra,* the Colorado Supreme Court concluded double jeopardy prohibited Serravo's retrial:

> Because *Burks* holds that an appellate determination of evidentiary insufficiency to sustain a verdict is an adjudication on the merits that bars retrial, it necessarily follows that the Double Jeopardy Clause of the United States Constitution prohibits retrial after a jury verdict of not guilty by reason of insanity. Such a verdict represents a judicial determination that, irrespective of any error in a trial court's instructional rulings, the prosecution has failed to prove the defendant's sanity beyond a reasonable doubt and that, consequently, the defendant lacked the mental capacity to commit the crime charged against him. See *United States v. Scott*, 437 U.S. 82, 97-98, 98 S.Ct. 2187, 2197–98, 57 L.Ed.2d 65 (1978) (noting that, for purposes of Double Jeopardy Clause, post-jeopardy dismissal based on insufficiency of prosecution's evidence relating to insanity defense, as distinguished from post-jeopardy dismissal based on preindictment delay, constitutes a finding of lack of criminal liability even though such finding results from erroneous evidentiary ruling or erroneous interpretation of governing legal principles).

Allowing a retrial on the issue of a defendant's sanity after the jury has returned a verdict of not guilty by reason of insanity is nothing less than giving the state the impermissible "second bite at the apple." *Burks*, 437 U.S. at 17, 98 S.Ct. at 2149.

*Id.* at 141.

{¶68}  In *People v. Harrison*, 366 Ill.App.3d 210, 851 N.E.2d 152 (2006), the Illinois Supreme Court held that an NGRI verdict is an acquittal.  It is important to note that Illinois has express constitutional prohibitions against appeals of judgments of acquittals. Harrison was found not guilty by reason of insanity, but filed an appeal asserting ineffective assistance of counsel and insufficient evidence supporting the NGRI verdict. The Illinois Supreme Court dismissed Harrison's appeal holding that his remedy was to raise a challenge to his confinement through the commitment statute.  The *Harrison* Court opined:

An NGRI verdict, then, is equivalent to an acquittal.  It is strictly a finding that the defendant is not guilty, in the same manner as any other acquittal which renders a defendant discharged from any liability as, for example, when a defendant receives a directed verdict, when a mistrial is declared and the defendant is not prosecuted again, or when a jury for whatever reason determines that the defendant should be absolved from any obligation related to the alleged crime.  Merely because the reason behind a defendant's release from responsibility is a successful claim of insanity should not produce a different outcome; after all, the effect is the same since the defendant has avoided liability. See, e.g., *Adams*, 35 Ill.App.3d at 814, 343 N.E.2d 659 (a defendant acquitted due to insanity "is entitled to all the protection and constitutional rights as if acquitted on any other ground"). As such, it is imperative to note perhaps the most basic tenant of our federal and state constitutions: a defendant who has been acquitted and declared not guilty may not be retried on the same offense and his verdict cannot be reviewed. See *Sanabria v. United States*, 437 U.S. 54, 64, 98 S.Ct. 2170,

2179, 57 L.Ed.2d 43, 54 (1978) (this is true even if the legal rulings underlying the acquittal were in error); *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642, 651 (1977), relying on *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896); accord *Crilly*, 108 Ill.2d at 312-13, 91 Ill.Dec. 601, 483 N.E.2d 1236 (discussing and applying these federal cases to our state); see also Ill. Const.1970, art. VI, § 6 (no appeal may be taken from judgment of acquittal). Therefore, because an NGRI verdict is an acquittal, we cannot review defendant's cause here.

*Id.* at 215.

**{¶69}** Insofar as the Ohio Supreme Court in *Wilcox, supra,* opined that an insane acquitee is "incapable of possessing the specified [guilty] state of mind," we conclude the trial court's NGRI verdicts constitute a finding there was insufficient evidence to prove the mens rea element of the charged crimes. Our conclusion is consistent with United States Supreme Court precedent that an "acquittal" includes "a ruling by the court that the evidence is insufficient to convict," a "factual finding [that] necessarily establish[es] the criminal defendant's lack of criminal culpability," and any other "rulin[g] which relate[s] to the ultimate question of guilt or innocence." *Scott*, 437 U.S. at 91, 98, and n. 11, 98 S.Ct. 2187 (internal quotation marks omitted).

**{¶70}** Moreover, the fact that the NGRI verdicts resulted from a bench trial without a valid jury waiver does not constitute simple error permitting retrial. In *Fong Foo, supra,* the Court of Appeals held the District Court had erred in various rulings and lacked power to direct a verdict of acquittal before the government rested its case. Nonetheless, the United States Supreme Court concluded that double jeopardy prohibited retrial. Like the district court in *Fong Foo*, the trial court in this case was a court of competent jurisdiction that entered verdicts of acquittal despite a lack of power due to the invalid jury waiver. Despite the error, the trial court concluded there was insufficient evidence to prove the mens rea elements of the charged crimes. Therefore, like Fong Foo, Appellant cannot be retried.

**{¶71}** Accordingly, we find Appellant's first assignment of error has merit. The NGRI verdicts are vacated as Appellant did not waive his right to a jury trial. Further, the Order entering the NGRI verdicts constitutes an acquittal, that is, a finding by the trial court there was insufficient evidence to prove the mens rea element of the charged crimes, as well as a factual finding that necessarily establishes the criminal defendant's lack of criminal culpability. Therefore, jeopardy attached to the Order and double jeopardy prohibits Appellant's retrial.

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT COMMITTED PLAIN ERROR AND VIOLATED [APPELLANT'S] STATE AND FEDERAL RIGHTS TO DUE PROCESS OF LAW IN VIOLATION OF ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

## ASSIGNMENT OF ERROR NO. 3

**[APPELLANT] WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.**

## ASSIGNMENT OF ERROR NO. 4

**THE TRIAL COURT LACKED JURISDICTION TO ENTERTAIN THE STATE'S MARCH 13, 2023 DESIGNATION OR MODIFICATION OF [THE] RECORD PURSUANT TO APP.R. 9(E).**

**{¶72}** Because Appellant's first assignment of error is meritorious, his remaining assignments of error are moot.

## **CONCLUSION**

**{¶73}** For the foregoing reasons, the NGRI verdicts are vacated.  Further, double jeopardy prohibits Appellant's retrial on the charged counts.

Robb, J., concurs.

Hanni, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the first assignment of error is sustained and it is the final judgment and order of this Court that the judgments of the Court of Common Pleas of Jefferson County, Ohio, are vacated.  Further, double jeopardy prohibits Appellant's retrial on the charged counts.  Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**